# EXHIBIT B

NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
ARBITRATION

---

STAMFORD HOLDING COMPANY,  :
a Delaware business corporation ("Stamford")  :
                                      Claimant  :

                    v.  :

MERRILL, LYNCH, PIERCE, FENNER  :
    & SMITH, INC. ("Merrill Lynch")  :
              and  :   No.
MAUREEN CLARK ("Clark")  :
              and  :
CHRISTOPHER PLUMMER ("Plummer")  :
              and  :
NEW ENGLAND EQUITY, INC. ("Equity")  :
                        Respondents  :

## STATEMENT OF CLAIM

1. Claimant Stamford is a Delaware corporation duly registered with the Delaware Department of State. Its sole and 100% shareholder is Edmund Massullo, M.D., residing at 4410 Yakata Doro Circle, Youngstown, Ohio 44114.

2. Respondent Merrill Lynch is a Delaware corporation with its worldwide headquarters located at the World Financial Center, North Tower, 250 Vesey Street, New York, New York 10281. Merrill Lynch is engaged in the business effecting transactions in securities for the accounts of others and maintains branches throughout the United States.

3. At all times pertinent hereto Merrill Lynch was responsible for supervising and overseeing the action(s) of Daniel R. Adams in his capacity as broker with Merrill Lynch acting

1

within the scope of his employment as employee and agent of Merrill Lynch for his actions as affecting Claimant Stamford Holding Company.

4. One Maureen Clark opened two accounts with Merrill Lynch one titled Stamford Holding Corporation and the other Stamford Holding Company, collectively Stamford Holding Company as Claimant herein.

5. All the shares of stock for both corporations were owned by and issued to Edmund Massullo, M.D. and were kept in the custody of an escrow agent.

6. In opening the two Merrill Lynch accounts Maureen Clark falsely represented herself to be the duly elected president of Stamford. In fact, sole shareholder Massullo had never held a shareholder meeting in order to appoint a board of directors who and which, in turn, would elect officers including a president. Merrill Lynch broker Daniel R. Adams opened the two accounts at the behest of Maureen Clark knowing same to be contrary to attendant law.

7. The two Stamford accounts had been funded with approximately five million four hundred fifty thousand ($5,450,000.00) dollars consisting of Dr. Massullo's pension plan of three million fifty ($3,050,000.00) thousand dollars and of two million four hundred thousand ($2,400,000.00) dollars from the sale of Massullo Real Estate in eastern Pennsylvania.

8. Opened on or about August 8, 1995, the two accounts were closed at the end of calendar year 1998 with no balance.

9. Merrill Lynch's supposedly independent and objective investment advice was in fact biased as a result of which the New York State Supreme Court issued an order in 2002 requiring immediate reform of investment analysis practice at Merrill Lynch.

10. At all times pertinent hereto, Merrill Lynch did not maintain a fully independent and unbiased research group as a result of which said respondent distorted stock ratings to clients even when internally acknowledging that those stocks were not sound investments.

11. On July 2, 2001, NASD proposed new rules requiring analysts to disclose potential conflict of interests.

12. Respondent Clark is and was, at all times pertinent hereto, a citizen of Connecticut, residing at 123 Tipping-Rock Road, Stonington, Connecticut 06378

13. Respondent Plummer is and was, at all times pertinent hereto, a citizen of Connecticut, residing at 191 Main Street, Niantic, Connecticut 06357.

14. Respondent Equity is and was, at all times pertinent hereto, a Delaware corporation, with a principal place of business located at 191 Main Street, Niantic, Connecticut 06357, Clark and Plummer being its shareholders, officers and employees. Ramona E. DeSalvo, Esquire and Charles J. Irving, Esquire remain defendants in the Federal Action but are not respondents in this Arbitration.

15. Defendants and Respondents did solicit and induce Claimant to create a diversified stock portfolio which Defendants and Respondents would manage with prudent, conservative and long term growth stocks through Merrill Lynch brokerage house.

16. Without the knowledge or consent of Claimant, Defendants and Respondents agreed, combined and conspired among themselves to, and so did, devise and participate in a dastardly concert of action to defraud by obtaining and converting money to their own use by laundering Claimant's money through Equity, churning Claimant's stock portfolio at Merrill Lynch, with speculative and unauthorized trades and with exorbitant fees for legal and consulting fabricated services. Defendants and Respondents utilized a pattern of mail fraud, wire fraud and laundering

with the joint and several establishment and maintenance of an illegal enterprise by and through the ostensible legal entity titled New England Equity, Inc.

17. With deliberate indifference to Claimant's interest, Defendants' and Respondents' joint and several stewardship and management of Claimant's assets resulted in Plaintiff's loss of $5,450,000.00 as set forth hereinbefore.

18. It was a further part of the Defendants' and Respondents' scheme to defraud and to steal that Defendants and Respondents, jointly and severally, would communicate information gathered by Defendants and Respondents through interstate telephone calls.

19. It was a further part of the scheme to defraud and to steal that Defendants and Respondents would and did make false statements regarding their activities in order to conceal the aforesaid scheme and the activities of the participants therein.

20. It was a further part of the scheme to defraud and to steal that Defendants and Respondents would consult with each other in the unlawful scheme to plan concealment of the scheme from law enforcement authorities through the making of false statement, false declarations, obstruction of justice and perjury.

### RICO

21. Claimant incorporates by reference paragraph 1 to 19 above as though same were herein at forth at length.

22. This is a civil action brought by Claimant under the Organized Crime Control Act of 1970, Racketeers Influenced and Corrupt Organization, 18 U.S.C. §1961 *et seq*.

23. Claimant Stamford is a "person" within the meaning of 18 U.S.C. §1961(3) and §1964(c).

FROM MORGAN LEWIS PHILADELPHIA NEC-9-3    (MON) 9.22'03 15:23/ST. 15:20/NO. 4862192322 P 7

24. Each Defendant and Respondent herein is a person within the meaning of 18 U.S.C. §1961(3), 1962(c) and 1962(d).

25. Respondent Equity is an enterprise within the meaning of 18 U.S.C. §1961(4) and §1962(c).

26. Each Respondent herein was an owner of, was employed by, or was associated with the enterprise Equity engaged in, and the activities of which, affected interstate commerce within the meaning of 18 U.S.C. §1961(c).

27. Claimant Stamford was injured by Defendants and Respondents, jointly and severally, in its business and property in the amount of $5,450,000.00 by reasons of violations of 18 U.S.C. §1962(c) and (d) committed by the aforesaid Defendants and Respondents within the meaning of 18 U.S.C. §1964(c).

## RICO STATUTE

28. Claimant incorporates by reference paragraph 1 to 27 above as though same were herein at forth at length.

29. The activities of the Defendants and Respondents constituted the common law tort of conversion against Claimant said conversion being willful.

30. Claimant has sustained and will continue to sustain substantial damages as a result of the conversion in the amount stated above.

31. The activities of the Defendants and Respondents constituted actionable breach of contract as a result of which Claimant sustained a loss in the amount stated above.

## LEGAL MALPRACTICE AND FRAUDULENT CONCEALMENT

32. Claimant incorporates by reference paragraph 1 to 31 above as though same were herein at forth at length.

33. Defendants and Respondents breached their professional and fiduciary duty to Claimant thereby visiting upon Claimant the loss of $5,450,000.00 as stated above.

34. Without limiting any of the above, at all times pertinent hereto, Defendants and Respondents failed and refused to apprise and explain to Claimant the material developments of the ongoing stewardship of Claimant's assets.

## MALICIOUS INTERFERENCE WITH BUSINESS

35. Claimant incorporates by reference paragraph 1 to 34 above as though same were herein at forth at length.

36. This is a civil action brought by Claimant Stamford against Defendants and Respondents, jointly and severally for malicious interference with the business of Claimant.

37. Defendants and Respondents committed intentional and willful acts, as set forth herein, which were designed and calculated to cause damage to Claimant in its lawful business.

38. Defendants and Respondents, in committing intentional and willful acts calculated to cause damage to the business of Claimant acted with the unlawful purpose to cause such damage and without right or justification or other privilege or exemption which could warrant, justify, license, mitigate or excuse such conduct.

39. Claimant has been injured in its lawful business by reason of the malicious interference with its lawful business committed by Defendants and Respondents in that monies

FROM MORGAN LEWIS PHILADELPHIA NEC-9-3    (MON) 9.22'03 15:23/ST. 15:20/NO. 4862192322 P 9

lawfully due and owing to Claimant have been unlawfully withheld and converted to Defendants' and Respondents' own use.

## TORTIOUS BREACH OF DUTY OF GOOD FAITH
## AND FAIR DEALING ARISING OUT OF CONTRACT

40. Claimant incorporates by reference paragraph 1 to 39 above as though same were herein set forth at length.

41. This is a civil action brought by Claimant Stamford against Defendants and Respondents for a tortious breach of their contract with Claimant to manage Claimant's business affairs.

42. Respondent had the duty of good faith and fair dealing to Claimant Stamford arising out of the contract.

43. Without a written contract Defendants and Respondents agreed to act as investment advisors to Claimant by representing to Claimant that they possessed exceptional expertise and past complete success in the field of securities investment.

44. Defendants and Respondents engaged in a tortious course of conduct which included the performance of damaging acts without legal justification or excuse. These acts were motivated by actual malice for the purpose of deliberately and willful injuring Claimant Stamford. As a direct and proximate result of the breach of duty of good faith and fair dealing Claimant sustained the monetary loss of $4,450,000.00.

## COUNT I
## RICO

45. Claimant incorporates by reference paragraph 1 to 44 above as though same were herein set forth at length.

46. For the reasons set forth above, Defendants therein and Respondents herein violated the letter and spirit of the RICO statute.

## COUNT II
### Fraud

47. Claimant incorporates by reference paragraph 1 to 46 above as though same were herein set forth at length.

48. During the period that he acted as claimant's broker Adams, via Maureen Clark, represented that investments in the chosen securities were selected to be suitable for Stamford's investment objectives.

49. Adams' representations regarding suitability were material to the transactions undertaken.

50. When he made the representations Adams was aware that they were incorrect and that the chosen securities were not appropriate investments for Claimant Stamford.

51. Adams intended that Stamford rely on his misrepresentations and Claimant did, in fact, justifiably rely on Adams' misrepresentations.

52. The Claimant was damaged by Adams' conduct in the form of realized and unrealized losses.

53. Adams' conduct was willful, wanton, intentional, outrageous and reckless.

54. Adams, for and on behalf of Merrill Lynch, facilitated and participated in the dastardly scheme of Maureen Clark by churning the account and by converting large amounts of cash to the use of others and to the detriment of Claimant.

55. By virtue of the principles of respondeat superior, Merrill Lynch is liable for Adams' fraud.

## COUNT III
### Breach of Fiduciary Duty

56. Claimant incorporates paragraphs 1 to 55 above as though same were herein set forth at length.

57. In his capacity as its broker, Adams and Merrill Lynch, as the brokerage house, both owed Claimant a fiduciary duty.

58. By placing Claimant in unsuitable investments and in withdrawing and converting large sums of money to the use of others, broker Adams and Respondent Merrill Lynch breached their fiduciary duty to Claimant.

59. Merrill Lynch's conduct, by and through Adams, was willful, wanton, intentional and outrageous with reckless indifference to the financial interests and objectives of Claimant.

60. Claimant was damaged by Defendants' and Respondents' conduct in the form of realized and unrealized losses.

61. By virtue of the principles of respondeat superior, Merrill Lynch is liable for Adams' breach of fiduciary duty.

## COUNT IV
### Breach of Contract

62. Claimant incorporates paragraphs 1 to 61 above as though same were herein set forth at length.

63. Merrill Lynch entered into a contract to perform investment services on behalf of Claimant.

64. Merrill Lynch breached that contract by placing Claimant in unsuitable investments and by releasing and converting large sums of money for the use of others.

65. Claimant was damaged by respondent Merrill Lynch's conduct in the form of realized and unrealized losses.

### COUNT V
### Failure to Supervise

66. Claimant incorporates paragraphs 1 to 65 above as though same were herein set forth at length.

67. While Adams was in its employ, Merrill Lynch had a duty to supervise his conduct, the trading he conducted on behalf of Claimant and the large sums of Claimant's money that were converted to the use of others.

68. Merrill Lynch failed to appropriately supervise Adams and, as a result, he was permitted to continue in placing Claimant in an inordinate amount of securities which the brokerage house knew, or should have known, were inappropriate and inconsistent with Claimant's investment objectives. Additionally, Adams was permitted to release large sums from Claimant's cash account to third persons for the conversion of said sums to the use of such third persons.

69. Respondent's conduct was willful, wanton, intentional, outrageous with reckless indifference to the financial interests and objectives of Claimant.

70. Claimant was damaged as a result of respondent's failure to supervise in the form of realized and unrealized losses.

## PRAYER FOR RELIEF

WHEREFORE, Claimant demands that judgment be entered against Respondents, jointly and severally, in favor of the Claimant:

I. For compensatory damages of $5,450,000.00 with compounded interest; and

II. For reimbursement of damage and injury to business in an amount as yet undetermined; and

III. For compensatory damage of $5,450,000.00 and for the undetermined amount for the damage and injury to business trebled in accordance with 18 U.S.C. §1964(c); and

IV. For exemplary damages; and

V. For punitive damages; and

VI. For reasonable attorney fees in accordance with 18 U.S.C. §1964(c); and

VII. For any and all other relief which this Panel deems just and fair.

Respectfully,

DI MASSA ASSOCIATES LTD

By: _____
Rudolph J. Di Massa,
Attorney for Claimant

11

## Certificate of Service Form

State of __Pennsylvania__, County of __Philadelphia__

I __Rudolph J. Di Massa__ do hereby certify that on __9-19-03__
   (Name of server)                                              (Date)

a true and correct copy of the enclosed __Statement of Claim__
                                                    (Title of Pleading)

was forwarded by __United States Mail__ to the following
                        (Type of Service)

address(es):

MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC.
c/o G. Jeffrey Boujoukos, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921

MAUREEN CLARK
123 Tipping-Rock Road
Stonington, CT  06378

CHRISTOPHER PLUMMER
191 Main Street
Niantic, CT  06357

NEW ENGLAND EQUITY, INC.
191 Main Street
Niantic, CT  06357

## NASD Regulation Arbitration
## UNIFORM SUBMISSION AGREEMENT

*Claimant(s)*

**In the Matter of the Arbitration Between**

Name(s) of Claimant(s)

Stamford Holding Company

_____

_____

**and**

Name(s) of Respondent(s)

Merrill Lynch, Maureen Clark, Christopher Plummer and New England Equity

Arbitration No. 03-06876

_____

1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

2. The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3. The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

4. The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5. The parties hereto have signed and acknowledged the foregoing Submission Agreement.

STAMFORD HOLDING COMPANY

**Claimant Name** (please print)

*[signature]*  10/6/03

**Claimant's Signature** By: Edmund A. Massullo, M.D.    Date

_____

**Claimant Name** (please print)

_____

**Claimant's Signature**    Date

*If needed, copy this page.*

21