# EXHIBIT D

**BINGHAM McCUTCHEN**

Mary Gail Gearns, Esq.
DirectDial: 212.705.7252
DirectFax: 212.702.3610
E-Mail: marygail.gearns@bingham.com

July 12, 2005

Bingham McCutchen LLP
399 Park Avenue
New York, NY
10022-4689

212.705.7000
212.752.5378 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

<u>**VIA FACSIMILE & U.P.S.**</u>

Mr. Kevin R. Zehe
Ms. Harlita H. Robinson, CPA
Ms. Blanca E. Ortiz
c/o NASD Dispute Resolution, Inc.
One Liberty Plaza
165 Broadway, 27th Floor
New York, New York 10006

**Re: Stamford Holding Co. v. Merrill Lynch, NASD No. 03-06876**

Dear Mr. Zehe, Ms. Robinson and Ms. Ortiz:

Respondent Merrill Lynch hereby opposes claimant Stamford's request that the Panel enter an order discontinuing this case – on the literal eve of trial, after almost two years of arbitration proceedings – *without* prejudice. Merrill Lynch also hereby responds to Stamford's cross-motion for summary judgment and requests that the Panel consider and rule upon the parties' pending dispositive motions either at the first hearing session on Monday, July 18, 2005, or, if possible, during a prehearing conference call scheduled for that purpose later this week.

For the reasons set forth in Merrill Lynch's motion to dismiss, filed July 1, 2005, this case is frivolous and should be dismissed in its entirety *with* prejudice, without the need for an evidentiary hearing. Like the plaintiff in *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 (10th Cir. 2001) (attached at Tab A to Merrill Lynch's motion to dismiss), Stamford "was provided with a fundamentally fair arbitration proceeding in that [it] was provided with the opportunity to fully brief and argue the motion[] to dismiss. . . ."

> '[A] fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers. . . .' In other words, *if a party's claims are facially deficient and the party therefore has no relevant or material evidence to present at an evidentiary*

NYDOCS/1203754.1

Mr. Kevin R. Zehe
Ms. Harlita H. Robinson, CPA
Ms. Blanca E. Ortiz
July 12, 2005
Page 2

> ***hearing, the arbitration panel has full authority to dismiss the claims without . . . holding an evidentiary hearing***.

*Id.* (emphasis added; internal citations omitted).

Bingham McCutchen LLP
bingham.com

Here, Stamford's so-called "response and cross-motion" is devoid of *any* factual or legal authority to support its claims. Stamford merely reiterates, with no support whatsoever, the conclusory allegations contained in the Statement of Claim – despite overwhelming documentary evidence that the allegations are false. Stamford does not dispute, among other things, that Maureen Clark was given a general power of attorney by the Massullos in November 1993 (*see* Motion to Dismiss, Exhs. 4 and 5)[1], that she was identified as the "sole signatory for Stamford Holding Corp." in a general release and indemnification agreement signed by the Massullos in August 1995 (*id.*, Exh. 9), that the Massullos informed various third parties (including their lawyers) that Ms. Clark had the authority to act on their behalf (*id.*, Exhs. 7, 8, 21, 23, 25), or that every disbursement made from Stamford's Merrill Lynch accounts was made either to the Massullos directly or to their known creditors (*id.*, Exhs. 12-33).

Stamford similarly fails to offer *any* explanation (let alone a credible one) for Dr. Massullos' disavowal now of his sworn statement in March 2002 that Stamford was incorporated "with Massullo as the sole 100% shareholder, ***Clark as president/secretary*** and Plummer as vice-president." *Id.*, Exh. 8 at p. 2 (emphasis added). Neither does Stamford offer any legal authority to challenge Merrill Lynch's showing that Judge Droney's prior holding – *i.e.*, that Stamford has failed to raise a genuine issue of material fact concerning Ms. Clark's actual and apparent authority to act for Stamford – is binding on Stamford and may not be re-litigated here. *Id.*, Exh. 11 at p. 16.

Furthermore, Stamford apparently now ***concedes*** that disbursements made directly to the Massullos cannot give rise to a claim against Merrill Lynch for conversion, fraud, or any other alleged wrongdoing. Simply stated, the Massullos in fact ***received*** those monies and cannot seek to "recover" them from Merrill

---

[1] The Massullos granted a second general power of attorney to Ms. Clark in January 1995.

Mr. Kevin R. Zehe
Ms. Harlita H. Robinson, CPA
Ms. Blanca E. Ortiz
July 12, 2005
Page 3

Bingham McCutchen LLP
bingham.com

Lynch. For precisely the same reason, however, disbursements made to others *for the Massullos' benefit* cannot be actionable. There is no principled or legitimate basis – and Stamford fails to offer one – upon which to distinguish between payments made directly to Massullos and ones made to others for their direct benefit.

By simply repeating the conclusory allegations of the Statement of Claim and peppering them at times with *ad hoc* and irrelevant legal jargon, Stamford's counsel, Mr. Di Massa, is repeating a tactic he has employed before (without success). Specifically, in *Alcman Servs. Corp v. Commonwealth of Pennsylvania, Dept. of Labor & Industry* (a copy of which is attached hereto), the court noted that the action had been based on a "variety of theories, none of which makes any sense at all," and it dismissed the case with prejudice after finding that "***plaintiff's counsel, Rudolph J. DiMassa Esquire, has merely reiterated, in summary form, the allegations of the complaint, supplemented by disjoined legal jargon which can charitably be described as unhelpful, to say the least.***" *Id.*, 1996 WL 667840 at *1 (Nov. 12, 1996 E.D. Pa.) (emphasis added). A more apt description of Mr. Di Massa's filings in this case is difficult to imagine.[2]

---

[2] Indeed, Mr. Di Massa has a troubling history of advancing nonsensical and even sanctionable claims. Thus, for example, in *Blancato v. Saint Mary Hosp.* (a copy of which is attached hereto), Mr. Di Massa was sanctioned for failing to conduct a reasonable investigation into the facts and law relating to his client's allegations and thereby filing a frivolous complaint. In its decision awarding sanctions, the court expressly observed:

> [M]y research revealed no prior instances of the imposition of Rule 11 sanctions against attorney DiMassa. Nonetheless, ***the public record does reveal that in recent years the quality of his legal representation is less than that expected of a skilled litigation attorney.***

> The present case only aggravates this record. This troubling development supports my finding that ***sanctions are necessary to curtail this conduct.***

*Id.*, 1993 WL 273687 at *4 (Jul. 21, 1993 E.D. Pa.) (emphasis added).

Mr. Kevin R. Zehe
Ms. Harlita H. Robinson, CPA
Ms. Blanca E. Ortiz
July 12, 2005
Page 4

Bingham McCutchen LLP
bingham.com

Here, too, the claims asserted are nonsensical and unsupported by a shred of evidence – despite almost two years of prehearing proceedings.[3] We have come to believe that Stamford never had any intention of taking its claims all the way through trial. Consistent with this, we note that, while the deadline for the parties' prehearing exchange was Tuesday, June 28, 2005, Stamford never identified a single document or witness that it intended to present at the hearing as expressly required under the NASD's rules. *See* NASD Code of Arbitration Procedure, Rule 10321 (providing that the "arbitrators may exclude from the arbitration any documents not exchanged or witnesses not identified" at least 20 calendar days prior to the first scheduled hearing date). Moreover, two days before seeking to adjourn the hearing based on Mrs. Massullos' alleged medical condition, Mr. Di Massa sought Merrill Lynch's agreement to transfer the case to Pennsylvania (where none of the Panel members lives or works, thereby making it impossible to proceed with the hearing on July 18) on the alleged grounds that his own wife's health prevented ***him*** from attending the hearing in Ohio.

There is no question that this Panel has the right to deny Stamford's request to dismiss its claims without prejudice and instead to enter an order dismissing them ***with*** prejudice. As the court held in *Howard, Weil, Labouisse, Friedrichs Inc. v. Tower Hill Trading Co.* (a copy of which is attached hereto):

> [A]s a matter of principle, it would be wholly unreasonable [to] allow a party to initiate an arbitration, proceed part way through the hearings, and then abandon this arbitration in order to start a

---

[3] For example, while Stamford continues to insist that its accounts somehow lost money, a profit and loss analysis of the account prepared by Merrill Lynch's expert proves exactly the opposite. The accounts realized a ***gain*** of almost $90,000. *See* Motion to Dismiss, Exh. 35. Indeed, Stamford's own accounting reflects investment earnings of $64,493.97, investment income of $43,099.82, and total account fees of $27,241.33 – for a net ***profit*** (calculated by Stamford) of approximately $80,000. *Id.*, Exh. 12. Stamford's oft-repeated claim that the Massullos deposited more than $5 million into Stamford's accounts is similarly belied by its own accounting, which shows total deposits of approximately $2.4 million. *Id.*

Mr. Kevin R. Zehe
Ms. Harlita H. Robinson, CPA
Ms. Blanca E. Ortiz
July 12, 2005
Page 5

Bingham McCutchen LLP
bingham.com

> new one – all without any possibility of sanctions or conditions. If such a situation were to be permitted, a party could simply shop from one aborted arbitration to the other until finding one that appeared to be going favorably. The costs and burden to the other party would be multiplied with no sensible remedy.
>
> Of course, no rational argument can be advanced in favor of this kind of a procedure. *An arbitration panel dealing with a request to withdraw from a partially completed arbitration must have the power to assess costs against the withdrawing party and must have the power to decide whether, in fairness and justice, the withdrawal should be with or without prejudice.*

*Id.*, 1995 U.S. Dist. LEXIS 13302, *5-7 (S.D.N.Y. 1995) (emphasis added).

Here, the Panel's authority is all the more clear because Stamford, too, has asked the Panel to rule on the claims without the need for an evidentiary hearing. Merrill Lynch respectfully submits that, in considering the parties' respective dispositive motions pending before it, the Panel should grant Merrill Lynch's motion in its entirety and dismiss all claims *with* prejudice.

Very truly yours,

*[signature]*
Mary Gail Gearns

Attachments
cc: Rudolph J. Di Massa, Esq. (via facsimile)

NYDOCS/1203754.1

**Westlaw.**

Not Reported in F.Supp.
1996 WL 667840 (E.D.Pa.), Unempl.Ins.Rep. (CCH) P 22,172
(Cite as: 1996 WL 667840 (E.D.Pa.))

Page 1

C

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
The ALCMAN SERVICES CORPORATION
v.
The COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF LABOR AND INDUSTRY, et al.
Civil Action No. 96-4448.

Nov. 12, 1996.

Rudolph J. Di Massa, Jr., Di Massa Associates Ltd., Philadelphia, PA, for Plaintiff.

Claudia M. Tesoro, Office of Attorney General, Philadelphia, PA, for Defendants.

MEMORANDUM AND ORDER

FULLAM, Senior District Judge.

*1 This litigation is apparently the culmination of a long-running dispute between plaintiff and the Commonwealth of Pennsylvania Department of Labor and Industry concerning the correct rate to be used in determining plaintiff's liability for contributions to the Unemployment Compensation Fund. Plaintiff insists that the appropriate rate is .0230, the rate which had been applied in 1986 and previously. The state authorities, beginning in 1986, applied a higher rate. Plaintiff continued to make contributions at the old rate. Defendants filed a series of liens for the unpaid balances, with interest and penalties.

Plaintiff did not avail itself its right to an administrative appeal (plus review in the Commonwealth Court if necessary), because plaintiff was apparently unwilling to fulfill a requirement for taking such an appeal, namely, payment of the disputed amount (which would be refunded, if the appeal were successful). At some point, plaintiff's principal was prosecuted criminally, in a summary proceeding before a district justice, but the prosecution was withdrawn by the Commonwealth, with leave to refile, and has never been reactivated.

Plaintiff has brought this action, claiming millions of dollars in compensatory damages, and also seeking injunctive and declaratory relief, on a wide variety of theories, none of which make any sense at all. Defendants filed a motion to dismiss, under Fed.R.Civ.P. 12 (b) (1) and 12 (b) (6), carefully pointing out such matters as the following:

This action is barred by the Tax Injunction Act, 28 U.S.C. § 1341. Plaintiff's claims are also barred by the Eleventh Amendment. Plaintiff's claim that the defendants have violated his constitutional right under the "separation of powers" principle is nonsensical, as is the claim under the Eighth Amendment. The state law claim for malicious prosecution (and related matters) lacks merit, if for no other reason than the fact that the criminal prosecution has not been finally terminated in plaintiff's favor. (I note, also, that plaintiff's complaint plainly shows that there was probable cause for the prosecution, and that any procedural irregularities which may have occurred were of no consequence).

In response to the motion to dismiss, plaintiff's counsel, Rudolph J. DiMassa Esquire, has merely reiterated, in summary form, the allegations of the complaint, supplemented by disjointed legal jargon which can charitably be described as unhelpful, to say the least. Plaintiff's counsel seems to be under the erroneous impression that the withdrawal of the criminal prosecution with leave to refile has conclusively established that, as plaintiff has contended all along, the appropriate rate for calculating plaintiff's tax liability to the unemployment compensation fund is .0230. Needless to say, this is totally in error. Indeed, as plaintiff's own allegations make clear the liens filed by the defendants have made it necessary for plaintiff to deposit with a title insurance company an $18,000. escrow fund to cover the disputed

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1996 WL 667840 (E.D.Pa.), Unempl.Ins.Rep. (CCH) P 22,172
**(Cite as: 1996 WL 667840 (E.D.Pa.))**

Page 2

deficiencies.

*2 Plaintiff's complaint will be dismissed, with prejudice.

O R D E R

AND NOW, this 12th day of November 1996, IT IS ORDERED:

1) Defendants motion to dismiss is GRANTED.

2) This action is DISMISSED, WITH PREJUDICE.

**Motions, Pleadings and Filings (Back to top)**

. 2:96CV04448  (Docket)

(Jun. 18, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.  
1993 WL 273687 (E.D.Pa.)  
(Cite as: 1993 WL 273687 (E.D.Pa.))

Page 1

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,  
E.D. Pennsylvania.  
Luciana BLANCATO, Administrator of the Estate  
of Paolo Blancato, Deceased, and  
Luciana Blancato, as Attorney In Fact of Filippa  
Blancato, Widow,  
v.  
SAINT MARY HOSPITAL,  
and  
Bruce B. Dershaw, M.D.,  
and  
Robert Grant, D.O.,  
and  
Steven Mazlin, M.D.,  
and  
Jonathan Gold, M.D.,  
and  
Valerio J. Federici, M.D.  
No. CIV. A. 91-4114.  
July 21, 1993.

MEMORANDUM

ANGELL.

*1 On April 12, 1993, I granted respondent St. Mary Hospital's motion for Rule 11 sanctions and directed this respondent to submit an affidavit of their costs, expenses and attorneys' fees reasonably incurred in defending this medical malpractice suit. [FN1] On April 29, 1993, after receiving St. Mary Hospital's affidavit, I allowed attorney DiMassa the opportunity to respond with documentation or other evidence in support of any mitigating factors to be considered by the Court in assessing the appropriate Rule 11 sanction. [FN2] DiMassa submitted a response [FN3] on May 19, 1993, to which St. Mary Hospital replied on June 7, 1993. Finally, on June 22, 1993, DiMassa replied to the respondent's June 7th response re-emphasizing his previous arguments. I will now determine the appropriate sanction to impose.

I. Background

Plaintiff commenced this medical malpractice suit on June 27, 1991, following the death of Paolo Blancato on June 28, 1989, after he was admitted to St. Mary Hospital for treatment of an acute small bowel obstruction caused by an incarcerated left inguinal hernia. The complaint alleged medical malpractice by St. Mary Hospital and several named doctors.

Plaintiff's original complaint survived several motions to dismiss pursuant to F.R.C.P. 12(b)(6), but not without substantial modification. [FN4] Discovery proceeded at an unsteady pace due to plaintiff's failure to timely respond to discovery requests, which resulted in the hospital moving to compel discovery. [FN5] In addition, I held two conferences with counsel, on August 4 and December 14, 1992, to discuss the various pending discovery matters. At issue was plaintiff's failure to produce an expert report, which continued for more than one year after the commencement of this action. Consequently, more than a year after the filing of the complaint the respondents still had no notice of the claims asserted against them. Finally, after I ordered the plaintiff to produce an expert report by a date certain the parties entered into a voluntary dismissal of the action pursuant to F.R.C.P. 41(a)(1)(ii). [FN6]

In a Memorandum Opinion dated April 12, 1993, and upon consideration of the hospital's motions for sanctions, I found that attorney DiMassa violated Rule 11 because he neglected to conduct a reasonable pre-filing inquiry into the facts supporting the allegations contained in the complaint and the law surrounding the alleged cause of action. Thereafter, I ordered St. Mary Hospital to submit an affidavit of its costs, expenses and attorneys' fees reasonably incurred in defending against this complaint. I also gave attorney

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 273687 (E.D.Pa.)
(Cite as: 1993 WL 273687 (E.D.Pa.))

Page 2

DiMassa the opportunity to submit evidence in support of any mitigating factors to be considered by the Court before imposing the appropriate sanction.

II. Structuring An Appropriate Sanction

Upon a finding that sanctions are warranted in a particular case, the court must then fashion a sanction suitable to the facts of the case. The Third Circuit requires that before imposing any monetary sanctions a court consider any mitigating factors [FN7] involved in the case. *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191 (3d Cir.1988)(citing *Eastway Constr. Corp. v. City of New York,* 637 F.Supp. 558 (E.D.N.Y.1986), *modified,* 821 F.2d 121 (2nd Cir.1987), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)).

*2 Courts have broad discretion in tailoring the sanction to impose upon a party. *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151 (3d Cir.1986). Nonetheless, a court must always be mindful that deterrence is the purpose of Rule 11. The Third Circuit has explained that an appropriate sanction is the " ... minimum that will serve to adequately deter the undesirable behavior." 857 F.2d 191, 194. The Court noted further that Rule 11's " ... primary purpose is not wholesale fee-shifting but [rather] correction of litigation abuse." 857 F.2d at 194.

Moreover, in *Cooter & Gell v. Hartmarx Corp,* 496 U.S. 384, 406 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990), the Supreme Court held that Rule 11 is not primarily a fee-shifting rule. "Although sanctions may properly include an award of counsel fees and expenses to the adversary, the prime goal should be deterrence of repetition of improper conduct, an award of counsel fees or other monetary sanction should not automatically be the sanction of choice." *Waltz v. County of Lycoming,* 974 F.2d 387, 390 (3d Cir.1992), *reh'g en banc denied,* 1992 U.S.App. LEXIS 24488 (3d Cir. Sept. 29, 1992)(citing *Cooter & Gell v. Hartmarx Corp,* 496 U.S. at 406). Further, the Court stressed that the Rule " ... permits an award only of those expenses directly caused by the improper filing." *Id.*

In this case, my decision to impose sanctions upon attorney DiMassa was based upon his failure to conduct a proper pre-filing investigation into the facts and the law surrounding this medical malpractice suit. Consequently, the hospital's expenses were directly caused by the filing of a frivolous complaint. The Third Circuit has ruled that in such cases the appropriate Rule 11 sanction would encompass all aspects of the litigation. *Doering, supra,* at 193.

A. Mitigating Factors
1. The Willfulness Or Bad Faith In Filing of Complaint

I find nothing in the record to suggest that attorney DiMassa acted in bad faith in filing this suit. Accordingly, I will not impose sanctions pursuant to 28 U.S.C. § 1927, which requires that I find bad faith before sanctions can be imposed. [FN8] *CPR Associates, Inc. v. Center For Emergency Medical Education, et al.,* No. 90-3758, 1992 U.S. Dist. LEXIS 13703, at *12, (E.D. Pa. Sept. 3, 1992). In addition, the record does not indicate that attorney DiMassa's violation of Rule 11 was willful. Rather, the record reveals that attorney DiMassa's violation was the result of an inadequate pre-filing investigation. [FN9]

2. The Degree of Frivolousness

In considering the degree of frivolousness of the complaint I am again hindered by the fact that the plaintiff failed to produce an expert report with which I would evaluate the legal plausibility and/or novelty of the plaintiff's claims. Nonetheless, I find that there is, at least, an intermediate level of frivolousness present here since without an expert report the plaintiff's complaint is merely a compilation of broad, unsubstantiated and unsupported allegations of medical malpractice. [FN10]

*3 Furthermore, to determine the degree of frivolousness in a complaint the court must carefully appraise the claims raised therein. Advocating new or novel legal theories does not trigger the imposition of sanctions. Rule 11 is not intended to " ... inhibit imaginative legal or factual approaches to applicable law or to unduly harness good faith calls for reconsideration of settled doctrine." *Gaiardo v. Ethyl Corp.,* 835 F.2d 479,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 273687 (E.D.Pa.)
(Cite as: 1993 WL 273687 (E.D.Pa.))

Page 3

483 (3d Cir.1987). Nothing in the record leads me to conclude that the plaintiff was attempting to carve out a novel legal or factual theory of medical malpractice.

On May 19th the plaintiff submitted documentary evidence which included, in part, a hand-written letter from M. Steven Farber, M.D. [FN11], dated only by a telefax transmission on May 11, 1993, stating that he had reviewed the decedent's medical records late in 1989 and that he had met with DiMassa late in 1990 for an extensive discussion regarding the treatment Mr. Blancato received while a patient at St. Mary Hospital.

After reviewing this letter and the attachments I find that this evidence insinuates only that at some time DiMassa consulted a medical expert about this cause of action. The lingering problem is that for more than one year neither Dr. Farber, nor any other medical expert, produced an expert report showing a causal nexus between the wrongful conduct and the plaintiff's injuries, as required under Pennsylvania law. *Bowser v. Lee Hospital Et Al*, 399 Pa.Super. 332, 582 A.2d 369 (1990).

Furthermore, the imprecise nature of this undated letter is insufficient to definitively establish when the plaintiff actually retained Dr. Farber's services, aside from the doctor's own general statements. Likewise, the contents of this letter is insufficient expert testimony to meet the plaintiff's burden of proof of causation. *See Bowser*, 582 A.2d at 373.
In light of these facts, I conclude that the existence of this letter and the attachments do not substantially mitigate the Rule 11 violation in this case.

3. The Respondent's Duty To Mitigate

In *Napier v. Thirty Or More Unidentified Fed. Agents*, 855 F.2d 1080 (3d Cir.1988), the Third Circuit held that a Rule 11 movant has a duty to mitigate its fees and expenses by " ... using reasonable means to terminate the litigation and to prevent costs from becoming excessive." 855 F.2d at 1094. In other words, could St. Mary Hospital have defended against this frivolous complaint in a less sophisticated or less expensive manner.

After reviewing the hospital's affidavit of fees and expenses I find that the hourly fees [FN12] and the number of hours expended on preparing a defense are reasonable. [FN13] Furthermore, I find that the hospital's supporting counsel's fees do not appear to be excessive or duplicative. *Napier*, 855 F.2d at 1094.

On its face, the complaint implicated the hospital, Sister Clare Carty, and five doctors in numerous and sundry allegations of medical malpractice. The broad nature of the complaint obliged the hospital to defend in a litigation-intensive way, which included filing a motion to dismiss for failure to state a claim upon which relief could be granted and to dismiss all claims asserted against Sister Clare Carty, as well as a motion to strike the pleadings as redundant and scandalous. St. Mary Hospital partially succeeded in this line of attack against the plaintiff's complaint. [FN14]

*4 In light of the above, I find that the hospital's expenditures to defend against this suit are wholly justified given the facts of the case. The hospital's response to the complaint was not unwarranted, and arguably, was directed toward an efficient termination of the lawsuit. Consequently, I find that St. Mary Hospital could not have defended against this complaint in a less sophisticated or less expensive manner.

4. History of Filing Frivolous Complaints

As previously noted, my research revealed no prior instances of the imposition of Rule 11 sanctions against attorney DiMassa. Nonetheless, the public record does reveal that in recent years the quality of his legal representation is less than that expected of a skilled litigation attorney. [FN15]

The present case only aggravates this record. This troubling development supports my finding that sanctions are necessary to curtail this conduct.

5. The Importance of Not Discouraging Particular Types of Litigation

The concern in this case is not just the plaintiff's legal theory(ies) of medical malpractice or the type of litigation initiated by the plaintiff. In fact, as noted, it is difficult to conclusively articulate the plaintiff's theory of malpractice in the absence of an

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
1993 WL 273687 (E.D.Pa.)
(Cite as: 1993 WL 273687 (E.D.Pa.))

expert report. The main issue here is the failure of attorney DiMassa to conduct an adequate pre-filing factual and legal investigation, as well as drafting a legally sufficient complaint.

My assessment of the appropriate sanction in this case has little impact on this factor because the sanction is aimed towards a pre-filing stage which is inherent in all types of litigation. Consequently, I conclude that imposing narrowly focused sanctions to remedy a deficient pre-filing investigation will not discourage other attorneys from bringing medical malpractice suits, nor " ... chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed.R.Civ.P. 11 advisory committee notes; *Napier,* 855 F.2d at 1091-1092.

6. Attorney DiMassa's Ability To Pay

On May 19, 1993, and in response to my earlier order, attorney DiMassa submitted an affidavit which set forth a general financial statement regarding his inability to pay any sanctions which I might impose in this case. [FN16] I am mindful of the fact that attorney DiMassa and his son operate a small law practice and I will conscientiously consider this fact in my evaluation.

7. The Respondent's Need For Compensation

The reverse of the preceding factor is the respondent's need for compensation. In *Eastway Const. Corp. v. City of New York,* 637 F.Supp. 558 (E.D.N.Y.1986)(*cited with approval* in *Doering,* 857 F.2d at 194-197) the court stated that "[T]his factor needs to be taken into account both to deter harassment of weaker defendants as well as to reduce any unnecessary burdens on plaintiff or his counsel." 637 F.Supp. at 574.

In the present case the hospital's litigation expenses are apparently covered by an insurance carrier. [FN17] Nevertheless, this fact should not relieve the plaintiff of the consequences of filing a frivolous lawsuit. Accordingly, I will weigh this factor in my final analysis.

8. Whether Attorney DiMassa Has Already Been Subject To At Least One Other Disciplinary Action

*5 As previously stated, there is no indication that any court has imposed monetary sanctions against attorney DiMassa prior to this case. Likewise, I am unaware of any other disciplinary action taken against attorney DiMassa or of any adverse press scrutiny of this case. *See Greenfield v. U.S. Healthcare,* No. 92-6345 (E.D. Pa. July 6, 1993).

B. The Monetary Sanction

After consideration of the respondent's affidavit, response, and reply and attorney DiMassa's response, attachments and reply and the abovementioned mitigating factors I conclude that a monetary sanction in the total amount of $16,386.66 is the appropriate sanction in this case to deter further misconduct by attorney DiMassa.

This figure includes the reasonable attorney's fees, costs and expenses (disbursements) incurred by St. Mary Hospital in defending against this frivolous complaint from the filing date on June 27, 1991, until September, 1992, when the respondent turned the majority of its attention towards pursuing Rule 11 sanctions. I make this differentiation because the hospital decided to move for sanctions on its own accord, especially in light of the plaintiff's voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(ii). Moreover, I find that limiting the sanctions to those fees and disbursements arising directly from the filing of the frivolous complaint is sufficient to deter similar misbehavior.

Thus, the following fees are included in this amount:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1993 WL 273687 (E.D.Pa.)
(Cite as: 1993 WL 273687 (E.D.Pa.))

Page 5

```
07/01/91    07/31/91    $ 4,029.50
            08/02/91    08/31/91     1,835.00
            09/03/91    11/30/91       249.00
            12/16/91    01/31/92     1,180.50
            02/03/92    05/31/92     1,055.50
            06/08/92    06/30/92     2,589.00
            07/01/92    07/31/92     2,838.00
            08/03/92    08/31/92 [FN18]  621.75
Subtotal:               $ 14,398.25
```

Likewise, the hospital's disbursements are included in the amount of $1,988.41, up to and including September, 1992. [FN19] For a grand total of $ 16,386.66.

Moreover, I find that this amount is an accurate reflection of the attorneys' fees and costs which McKissock & Hoffman, P.C. reasonably incurred in defending against the plaintiff's frivolous complaint from June, 1991 until September, 1992 and that these fees and costs were justified, reasonable and causally connected to DiMassa's violation of Rule 11. *See Greenfield, supra,* at 19, 20. An appropriate order will follow.

ORDER

AND NOW, this day of July, 1993, IT IS HEREBY ORDERED that monetary sanctions pursuant to Rule 11 are imposed against Rudolph J. DiMassa, Esquire in the amount of $16,366.66.

Attorney DiMassa shall remit this sum to the respondent, St. Mary Hospital, within ninety days (90) days of the date fof this Order.

FN1. See Memorandum and Order dated April 12, 1993, docket entry 76.

FN2. See Order dated April 29, 1993, docket entry 78.

FN3. This response included, *inter alia,* the following as attachments: (1) an undated handwritten letter, telefaxed on May 11, 1993, from M. Steven Farber, M.D. stating, in part, that attorney DiMassa submitted the decedent's medical records to him in late 1989 and that he and DiMassa met to discuss this cause of action early in 1990; (2) copies of medical charts containing Dr. Farber's notations and highlights; and, (3) an affidavit by attorney DiMassa generally setting forth his financial situation and his inability to pay any sanctions that the Court might impose.

FN4. Upon my recommendation, Judge O'Neill dismissed the complaint without prejudice for lack of subject matter jurisdiction withleave to amend. *See* Report and Recommendation of M. Faith Angell, United States Magistrate Judge, dated August 29, 1991, docket entry 22. Thereafter plaintiff filed an Amendment to the Complaint on October 2, 1991. On October 30, 1991, Judge O'Neill dismissed several claims, counts and references contained within the complaint. Further, the Court granted the defendants' motion to strike several additional claims, counts and references. *See* Judge O'Neill's October 30, 1990, Order, docket entry 22. Finally, plaintiff filed an Amended Complaint on or about December 16, 1992.

FN5. On May 4, 1992, St. Mary Hospital moved to compel the plaintiff to respond to its interrogatories, Expert Witness Interrogatories and Corporate Liability Interrogatories. On May 4, 1992, I issued an Amended Scheduling Order which directed the plaintiff to respond to all discovery requests by June 22, 1992. In addition, on May 14, 1992, I granted the hospital's motion to compel the plaintiff to respond to the Corporate Liability Interrogatories by June 18, 1992. *See* Order of May 4, 1992, and Amended Scheduling Order dated May 14, 1992,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B0055800000...    3/25/2005

Not Reported in F.Supp.  
1993 WL 273687 (E.D.Pa.)  
(Cite as: 1993 WL 273687 (E.D.Pa.))

Page 6

docket entries 50 and 52.

FN6. The plaintiff initially proposed to dismiss this action pursuant to F.R.C.P. 23(b), but the hospital declined to participate because the parties did not actually settle the action, but instead, the plaintiff offered to voluntarily dismiss the complaint. Thus, on or about February 12, 1993, the parties executed a stipulation dismissing the action pursuant to F.R.C.P. 41(a)(1)(ii). *See* N.T. 12/4/92, 2-4.

FN7. The Third Circuit suggested the following mitigating factors to be considered by the court before imposing monetary sanctions: (1) the attorney's history in filing frivolous actions or alternatively, his or her good reputation; (2) the defendant's need for compensation; (3) the degree of frivolousness; (4) whether the frivolousness also indicated that a less sophisticated or expensive response [by the other party] was required; (5) the importance of not discouraging particular types of litigation; (6) the willfulness of the offending party's actions, (7) the sanctioned party's ability to pay, and (8) whether the sanctioned party has been subject to, at least, one other disciplinary action. *Doering v. Union Bd. of Chosen Freeholders,* 857 F.2d 191, 195-197, n. 6 (3d Cir.1988); *Matthews v. Freedman,* 128 F.R.D. 192, 203 (E.D.Pa.1989); *Project 74 Allentown v. Beverly Frost, et. al.,* No. 91-5464, 1992 U.S. Dist. LEXIS 12095 (E.D. Pa. Aug. 10, 1992).

FN8. The imposition of sanctions under 28 U.S.C. § 1927 is discretionary. *CPR Associates, Inc. v. Center For Emergency Medical Education, et al.,* 1992 U.S. Dist. LEXIS 13703 (E.D. Pa. Sept. 3, 1992) ( *citing Jones v. Pittsburgh National Corp.,* 899 F.2d 1350, 1357 (3d Cir.1990); *Ford v. Temple Hospital,* 790 F.2d 342, 347 (3d Cir.1986)).

FN9. *See* Memorandum Opinion dated April 12, 1993, at 23.

FN10. Under Pennsylvania law a plaintiff in a medical malpractice suit must present expert testimony establishing a variance from accepted medical practice *and* that this deviation caused the plaintiff's injuries. *See Bowser v. Lee Hospital et al,* 399 Pa. Super 332, 582 A.2d 369, 373 (1990), *appeal denied* 590 A.2d 755 (Pa.1991)(*quoting Mitzelfelt v. Kamrin,* 379 Pa.Super. 121, 549 A.2d 935 (1988), *rev'd on other grounds* 526 Pa. 54, 584 A.2d 888 (1990)).

FN11. M. Steven Farber, M.D. is an Assistant Professor of Radiology, Chief Vascular & Intervention Radiology, at the University of South Florida and the James Haley Veterans Administration Hospital. Attached to this letter are several of the decedent's medical records with certain notations made by Dr. Farber. *See* Exhibit A of DiMassa's May 19, 1993, response.

FN12. The following fees are those charged by the hospital's counsel, McKissock & Hoffman, P.C., for work performed in this case:

*See* Affidavit of Fees and Costs, filed on or about April 27, 1993, at 2-3.

FN13. The lodestar amount is used in determining whether attorney's fees are reasonable. The lodestar is the product of the number of hours reasonably expended in responding to a pleading times an hourly fee based on the prevailing market rate. *Greenfield v. U.S. Healthcare,* No. 92-6345, at 11 (E.D. Pa. July 6, 1993)(*citing Blum v. Stenson,* 465 U.S. 886, 888 (1984) ). The Supreme Court has held that the "market rate in the relevant community" is the reasonable rate to use. *Blum,* 465 U.S. at 895. Furthermore, the Third Circuit has stated that the "market rate" can often be calculated based on a firm's normal billing rate. *Greenfield, Id.,* at 12, (*citing Student Pub. Interest Research Group, Inc. v. AT & T Bell Laboratories,* 842 F.2d 1436, 1445 (3d Cir.1988)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1993 WL 273687 (E.D.Pa.)  
(Cite as: 1993 WL 273687 (E.D.Pa.))

Page 7

FN14. See my Memorandum dated April 12, 1993, my Report and Recommendation dated August 29, 1991, as well as Judge O'Neill's Order of September 18, 1991.

FN15. See Memorandum Opinion dated April 12, 1993, at 23, 24.

FN16. See Exhibit B to the Plaintiff's Response to U.S. Magistrate Judge Angell's Order of April 12, 1993, filed on or about May 19, 1993.

FN17. See Affidavit of Fees and Costs, filed on or about April 27, 1993, at 1, 2.

FN18. Since the hospital's affidavit reports fees for a two-month period of time beginning 8/3/92 and ending 9/30/92, I have divided the total for this period, or $1,243.50, by two, to arrive at a one month figure for August, 1992, of $621.75. See Affidavit of Fees and Costs, at 15.

FN19. See Affidavit of Fees and Costs, page 13, for a list of the disbursements included in this total (from 07/31/91 to 09/30/92).

1993 WL 273687 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

. 2:91CV04114 (Docket)  
(Jun. 27, 1991)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5 of 9 DOCUMENTS

HOWARD, WEIL, LABOUISSE, FRIEDRICHS INC., LEGG MASON INC. and
LEGG MASON WOOD WALKER, INC., Petitioners, -against- TOWER HILL
TRADING CO., LTD., Respondent. TOWER HILL TRADING CO., LTD.,
Petitioner, -against- HOWARD, WEIL, LABOUISSE, FRIEDRICHS INC., LEGG
MASON, INC. and LEGG MASON WOOD WALKER, INC., Respondents.

94 Civ. 4709 (TPG), 94 Civ. 4710 (TPG)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*1995 U.S. Dist. LEXIS 13302*

September 13, 1995, Decided
September 15, 1995, FILED

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Cross-motions were filed after an arbitration award was made against respondent for costs of an arbitration which respondent unilaterally terminated by withdrawing claims as well as a ruling that its withdrawal thereof was with prejudice. After the award was made, respondent filed a motion to vacate in state court, petitioner filed a motion to confirm in the court, and petitioner then removed respondent's state court proceedings to the court.

**OVERVIEW:** After initiating the arbitration, respondent was upset by the panel's refusal to hear additional claims and it unilaterally withdrew its claims and initiated a new proceeding elsewhere. The panel thereafter issued an award that required respondent to pay certain costs connected with the proceedings and held that the claims were withdrawn with prejudice. After that award was issued, respondent filed a motion in state court to vacate the award while petitioner sought to confirm the award in the court. The motion to vacate was then removed to the court. The court granted the motion to confirm the award and denied the motion to vacate the award. After noting that respondent did not seek to modify the award after receiving notice of it, the court held that the panel had jurisdiction to make the award. It rejected as irrational respondent's claim that its withdrawal ousted the panel of jurisdiction, particularly because it would encourage parties to forum-shop. It also held that the rules under which the first arbitration had been convened granted power to the panel to determine and rule that the withdrawal was with prejudice to the claims being brought elsewhere.

**OUTCOME:** The court granted petitioner's motion to confirm the arbitration award and denied respondent's motion to vacate.

**CORE TERMS:** arbitrator, withdrawal, arbitration, arbitration award, claimant, partially, withdrawn, petition to vacate, withdrawing, vacate, petition to confirm, monetary award, res judicata, equitable, stricken

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN1] It would be wholly unreasonable for a court allow a party to initiate an arbitration, proceed part way through the hearings, and then abandon the arbitration in favor of starting a new arbitration all without any possibility of sanctions or conditions.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*

[HN2] An arbitration panel dealing with a request to withdraw from a partially completed arbitration must have the power to assess costs against the withdrawing party and must have the power to decide whether, in fairness and justice, the **withdrawal should be with or without prejudice.**

*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN3] Am. Arbitration Ass'n Commercial R. 43 provides that the arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

**COUNSEL:** [*1]

For HOWARD, WEIL, LABOUISSE, FRIEDRICHS INC., LEGG MASON, INC., LEGG MASON WOOD WALKER, INC., respondents: Andrew P. Saulitus, Lunney, Crocco, De Maio & Camardella, p.c., New York, NY. Arthur F. Fergenson, Weinberg & Green LLC, Baltimore, MD.

**JUDGES:** THOMAS P. GRIESA, U.S.D.J.

**OPINIONBY:** THOMAS P. GRIESA

**OPINION:**
### OPINION

These are cross-petitions growing out of an arbitration award. The Howard, Weil parties (referred to hereafter as "Howard, Weil") seek to confirm the arbitration award. Tower Hill seeks to vacate the award. The litigation commenced with a petition to vacate filed in Supreme Court, New York County, on June 2, 1994. On June 27, 1994 Howard, Weil filed its own petition in the federal court (94 Civ. 4709) and removed Tower Hill's petition to the federal court (94 Civ. 4710).

Howard, Weil's petition to confirm is granted. Tower Hill's petition to vacate is denied.

### FACTS

The issues relate solely to matters of procedure. The facts about the underlying dispute will not be dealt with in this opinion.

By agreement, the underlying dispute was submitted to arbitration under the Commercial Arbitration Rules of the American Arbitration Association. Tower Hill initiated the arbitration on May 1, 1992. Three arbitrators were selected and the arbitration began. A preliminary hearing was held on September 20, 1992 and an administrative conference was held on January 14, 1993. Hearing sessions were held on January 20, January [*2] 21 and March 29, 1993. Testimony was taken and documentary evidence was introduced.

At some point Tower Hill sought to assert claims in addition to the claims which were being dealt with in the hearings held in January and March 1993. Howard, Weil moved to strike these additional claims, and this motion was granted on January 12, 1994.

On January 21, 1994 the attorney for Tower Hill sent a letter by FAX to the Case Administrator of the American Arbitration Association stating:

> In view of the panel's decision to strike the preponderance of the claims on pleading grounds and to not hear claimant's case on the merits, claimant is filing its claims elsewhere. Claimant is accordingly withdrawing its claim in 13 T 169 00488 92 effective immediately.

On the same day Tower Hill commenced a proceeding before the American Arbitration Association in New Orleans.

At a hearing before the arbitrators in New York on January 25, Howard, Weil objected to Tower Hill's withdrawal. The arbitrators questioned whether they would have jurisdiction to go forward with the arbitration in view of the withdrawal. Howard, Weil then requested assessment of costs and was directed to submit a statement [*3] of its costs.

On May 3, 1994 the arbitrators delivered an award signed by each of the three members of the panel on April 26, April 28 and April 29. One member dissented, without any explanation as to what the dissent covered or the reason for the dissent. In any event, the award by the majority of the panel stated in part:

> 1. The withdrawal of the claim by CLAIMANT is accepted *with prejudice.*

The award went on to direct Tower Hill to pay $ 15,440.00 in "costs attributed to this arbitration," $ 3,375.00 representing a portion of the "compensation and expenses of the arbitrators," and $ 2,041.37 representing a portion of the "administrative fees and expenses of the American Arbitration Association." The total of these three amounts is $ 20,856.37.

The record does not indicate that before the issuance of the award there was any discussion before the arbitrators, or any presentation to the arbitrators, about the issue of whether the withdrawal would be with or without prejudice. However, when Tower Hill received

the award, there was no application to the arbitrators to modify the award and no complaint to the arbitrators about any lack of notice on this issue or lack [*4] of opportunity to be heard. No such argument has been made by Tower Hill in the court proceedings.

It should be noted that the arbitration award referred to the withdrawal of the "claim." Tower Hill's letter of January 21, 1994 stated that Tower Hill was withdrawing its "claim." The references to "claim" are lacking in precision. However, at the oral argument held on September 8, 1995 the parties, upon questioning by the court, agreed as to exactly what was and what was not covered by the withdrawal. Only those claims of Tower Hill which were partially heard were withdrawn. The additional claims, which Tower Hill attempted to assert but which were stricken, were not being entertained by the arbitrators at the time of the withdrawal; they were already out of the arbitration and did not need to be withdrawn and were not withdrawn. Therefore, it is agreed by the parties that, when the award states that the "withdrawal of the claim by CLAIMANT is accepted with prejudice," this actually means that the withdrawal of the partially heard claims is accepted with prejudice.

The New Orleans arbitration has gone forward. This court's understanding of the New Orleans proceedings is as follows. [*5] The New Orleans panel has dismissed, as barred by res judicata, the Tower Hill claims which were partially heard in New York and were permitted to be withdrawn with prejudice. The New Orleans panel heard on the merits those claims of Tower Hill which had been stricken in New York. As to the latter, on March 24, 1995 the New Orleans panel awarded Tower Hill $ 490,000. Howard, Weil has a motion pending in Louisiana state court to vacate this award.

DISCUSSION

In petitioning to vacate the New York arbitration award delivered on May 3, 1994, Tower Hill's primary argument is that the arbitrators lacked jurisdiction to make any award whatever following Tower Hill's withdrawal. Thus, according to Tower Hill, the arbitrators had no jurisdiction to award the $ 20,856.37 and had no jurisdiction to determine that the withdrawal was with prejudice. Tower Hill's argument is based on two closely related theories. The first is simply that the withdrawal had the necessary effect of terminating the arbitration. The second theory is that the arbitration could only take place by virtue of an agreement and consent of both parties, and Tower Hill's withdrawal meant that such agreement and consent [*6] no longer existed.

The court finds against Tower Hill for several reasons. In the first place, as a matter of principle, [HN1] it would be wholly unreasonable allow a party to initiate an arbitration, proceed part way through the hearings, and then abandon this arbitration in order to start a new one - all without any possibility of sanctions or conditions. If such a situation were to be permitted, a party could simply shop from one aborted arbitration to the other until finding one that appeared to be going favorably. The costs and burden to the other party would be multiplied with no sensible remedy.

Of course, no rational argument can be advanced in favor of this kind of a procedure. [HN2] An arbitration panel dealing with a request to withdraw from a partially completed arbitration must have the power to assess costs against the withdrawing party and must have the power to decide whether, in fairness and justice, the **withdrawal should be with or without prejudice.** It is not surprising that the rules of the American **Arbitration** Association are broad enough to grant arbitrators this type of power. [HN3] Rule 43 provides:

> The arbitrator may grant any remedy or relief that the arbitrator deems [*7] just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

The assessment of costs and the decision to permit a withdrawal only with prejudice are, in the view of the court, clearly within the broad power conferred by Rule 43, allowing the arbitrator to grant any remedy or relief deemed just and equitable. The court notes, of course, the further language providing that the action of the arbitrators must be "within the scope of the agreement of the parties." However, the arbitrators in this case obviously had the power to find that the remedies granted in the May 3, 1994 award were within the scope of the parties' agreement, and this finding cannot be disturbed by a court except in circumstances not presented here. See, e.g., *Lee v. Chica, 983 F.2d 883 (8th Cir. 1993).* Also, Arbitration Rule 52 provides:

> The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties.

The court holds that the arbitrators had jurisdiction to make the award delivered May 3, 1994.

Certain other points need to be briefly noted. Tower Hill argues that the [*8] arbitration award violates Rule 41, which requires that an award is to be made no later than 30 days from the date of closing the hearings. The hearing with respect to Tower Hill's withdrawal was held January 25, 1994 and the award was not made until May 3, 1994. Thus, there was more than a 30-day gap.

However, Tower Hill neglects to cite the fact that, at the hearing of January 25, it expressly waived the 30-day requirement (Tr. 541).

In its petition filed in New York state court, Tower Hill made certain brief and cryptic allegations apparently designed to challenge parts of the $ 20,856.37 monetary award. However, these contentions have not been briefed or further developed by Tower Hill. In any event, they are apparently based, at least in part, on superseded rules. Moreover, under the well established law about the power of arbitrators, it is clear that the monetary award should be confirmed.

This court has no authority to deal with the res judicata issues being litigated in New Orleans. As described earlier, the parties now agree upon the proper interpretation of the award rendered by the New York arbitrators. The legal effect of that award, as properly interpreted, is a [*9] matter governed by res judicata law. This will be determined in New Orleans.

## CONCLUSION

Howard, Weil's petition to confirm the arbitration award delivered May 3, 1994 is granted. Tower Hill's petition to vacate the award is denied.

SO ORDERED.

Dated: New York, New York
September 13, 1995

THOMAS P. GRIESA

U.S.D.J.

```
MODE = MEMORY TRANSMISSION            START=JUL-13 00:40    END=JUL-13 00:51

     FILE NO.=613

STN NO.   COMM.   ABBR NO.   STATION NAME/TEL NO.   PAGES      DURATION

  001     OK         ☎        913015274904         019/019    00:03:48
  002     OK         ☎        912155468133         019/019    00:06:19


                                                    -BINGHAM MCCUTCHEN LLPP  -
```

************************************   -            - ****  -              - ********

# BINGHAM McCUTCHEN

# Facsimile

DATE: July 13, 2005

|  | NAME | FAX | PHONE |
|---|---|---|---|
| TO: | Michele Collins, Esq.<br>NASD | (301) 527-4904 | (212) 858-4200 |
|  | Rudolph J. DiMassa, Esq | (215) 546-8133 | (215) 545-4333 |
| FROM: | Mary Gail Gearns<br>marygail.gearns@bingham.com | (212) 702-3682 | (212) 705-7252 |

PAGES: (INCLUDING THIS COVER PAGE):

RE: Stamford Holding Co. v. Merrill Lynch, et al; NASD No. 03-06876

**MESSAGE:**

Please see attached.

Bingham McCutchen LLP
399 Park Avenue
New York, NY
10022-4689

212.705.7000
212.752.5378 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

For transmission problems, please call (212) 705-7724
The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any unauthorized reading, distribution, copying or disclosure of this transmittal is prohibited. If you have received this transmittal in error, please notify us immediately at (same telephone number as in first paragraph - will duplicate) and return the transmittal to the sender. Thank you.

| Timekeeper No: | 15034 | Client/Matter No: | 0338420/305163 | DATE/TIME STAMP |
|---|---|---|---|---|
| Client/Matter Name: |  |  |  |  |
| Return To: | A.Madden/A.Marrero |  | Floor No: 24 |  |

NYDOCS/1202538.1