UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STAMFORD HOLDING COMPANY | : | CIVIL ACTION |
|                      Plaintiff, | : | NO. 3:02CV1236(CFD) |
| V. | : | |
| MAUREEN CLARK | : | |
| CHRISTOPHER PLUMMER, | : | |
| NEW ENGLAND EQUITY, INC., | : | |
| ATTORNEY CHARLES J. IRVING | : | |
| ATTORNEY RAMONA E. DESALVO | : | |
| AND MERRILL LYNCH PIERCE FENNER | : | |
| & SMITH, INC. | : | |
|                      Defendants. | : | JULY 2, 2007 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PLUMMER'S MOTION FOR ORDER IMPOSING SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

      Defendant, Christopher Plummer, provides the following Memorandum of Law in support of his Motion for Order Imposing sanctions brought pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereinafter "Rule 11").

      Federal Rule of Civil Procedure Rule 11(c) empowers the court to and provides that a district court may sanction attorneys or parties who submit pleadings for an improper purpose or that contain frivolous arguments or arguments that have no evidentiary support. Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record and in the attorney's individual name[.] . . . . [T]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any

improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. Even if the district court finds evidence to be insufficient for purposes of summary judgment, that "does not mean that appellants' claims were factually unfounded for purposes of Rule 11." Stitt v. Williams, 919 F.2d 516, 527 (9th Cir. 1990).

I. PROCEDURAL HISTORY

First and foremost, the court should note that the alleged wrongdoing occurred from 1993 to 1995, almost 14 years ago.

In November 1998 the Plaintiff filed the exact claims made within this Action in the Northern District of Ohio which eventually was ordered by Federal Judge Solomon that the case be moved to the American Arbitration Association in Hartford, Connecticut where all of these claims were to be litigated.

On April 4 2000 the claims were litigated before Judge Crosky with the American Arbitration Association and the Claimants in that action (New England Equity, Maureen Clark, Christopher Plummer)[1] agreed to accept a settlement proffered by Respondents (Edmund Massullo, Anne Marie Massullo)[2] to settle any and all claims made in both the Northern District of Ohio case and the AAA case in exchange of a Release for the

---

[1] New England Equity, Maureen Clark and Christopher Plummer became the Claimants in the AAA case because the Massullos' failed to timely seek arbitration.

[2] Edmund Massullo and Anne Marie Massullo are the sole shareholders of Stamford Holding Plaintiff in this Action.

Claimants and Attorney Ramona Desalvo, along with a payment from the Massullos to New England Equity as designated by New England Equity of $125,000.00(1).

In June 2001 Defendant Plummer initiated through Defendants council the transfer of said Judgment to Ohio by way of a foreign Judgment which was file in Youngstown Ohio on July 2001 and affirmed by Mahoning County Courts in September 2001, attachment and garnishments were instituted for collection of the Judgment in the amount of 567,220.30.

In November 2001 a partial payment was made in the amount of 89,663.00 was made to Defendant Plummer as a partial payment towards the Outstanding Judgment. Collection actions for the Balance due are still pending.

In January 2002 the Plaintiff, Stamford Holding through its council Dimassa & Associates filed in the Eastern District of Pennsylvania the instant action which is a carbon copy of the prior case which was settled in AAA.

This case commenced by writ, summons, and complaint filed on January 17, 2002 in the U.S. District Court for the Eastern District of Pennsylvania and signed by Plaintiffs Council. After numerous and costly Motions and pleadings the action was subsequently transferred to the U.S. District Court, District of Connecticut in July 2002.

In February and March 2002, various defendants, including defendant Christopher Plummer, Maureen Clark and New England Equity, Inc. ("Plummer"), filed motions to dismiss and/or motions to dismiss and/or stay the action for reasons of *res Judicata, statue of limitations, and Corporate Standing* pending arbitration.

On March 25, 2003, this court (per J. Droney) entered an order staying the pending lawsuit in favor of arbitration and ordered the plaintiff to commence arbitration

---

(1) Said Settlement payment was never received and Defendant Plummer, after having the Settlement amount affirmed in Superior Court, New London, Connecticut by Judge Hurley where Defendant Plummer was awarded costs of the action, fees and statutory interest, the Judgment was transferred to Ohio and a collection action in an effort to collect said settlement payment was initiated.

before the American Arbitration Association ("AAA"). Notwithstanding that order, the Plaintiff through their Council Dimassa & Associated intentionally ignored the order of this court (per J. Droney) and purposefully filed with the National Association of Securities Dealers, Inc. ("NASD") an application inclusive of the *res- judicata* claims against the Defendants New England Equity, Inc, Maureen Clark and Christopher Plummer, forcing the Defendants to defend incur substantial legal fees and costs associated with the filing of an answer and pleadings to the NASD claim or be defaulted by NASD. Defendants filed numerous pleadings along with a request for dismissal for lack of jurisdiction and failure to adhere to the order of this Court (per J. Droney).

On April 15, 2004 by Court Order the Plaintiff Stamford Holding withdrew the claims asserted against New England Equity, Maureen Clark and Christopher Plummer in ("NASD") due to lack of jurisdiction.

On July 15, 2005 after many years of litigating the Plaintiffs ironically attempted to withdraw the remaining claims against Defendant MERRILL LYNCH PIERCE FENNER & SMITH, INC., again on the eve of trial, upon objection from Defendant MERRILL LYNCH PIERCE FENNER & SMITH, INC. council the Plaintiff Stamford Holding was ordered to either litigate or withdraw with Prejudice all claims against the Defendant MERRILL LYNCH PIERCE FENNER & SMITH, INC.

On July 29, 2005 an order of Dismissal with prejudice was issued by NASD of any and all claims against MERRILL LYNCH PIERCE FENNER & SMITH, INC. (The Defendant Merrill Lynch spent in excess of five hundred thousand dollars in defense of that frivolous action.)

The Plaintiff now has wasted two years from the order of this court (per J. Droney) dated March 2003 and finally filed an application with the appropriate venue AAA, which occurred on March 10, 2005.

Incredulously, the Plaintiffs application and complaint filed on March 10, 2005 with the AAA was again the complete complaint inclusive of the *res judicata* claims and Plaintiff's council intentionally mislead the AAA and the Arbitrator in their pleadings and correspondence as to the purpose of AAA's exclusive role and insisted attempted to

litigate all of the issues in the complaint, instead of indicating to the AAA the Purpose of the referral from the District Court (per J. Droney) which was to decide the Defendants motions for dismissal of the case. Upon instance by Defendant Plummer for strict compliance of the order of this court (per J. Droney) the Plaintiff Stamford Holding instructed AAA just prior to the selection of an arbitrator to stay the Arbitration until further notice.

Over the next two years, Plaintiff then for unknown reasons continuously delayed, obviate and displayed vexatious acts which created an environment where the Defendant Plummer had became concerned about the diligence with which the plaintiff was pursuing arbitration and Defendant Plummer made numerous requests to AAA to have the issues referred to them by the District Court be decided.

The arbitration was recommenced and an initial hearing was finally scheduled after repeated requests by all of the Defendants for November 27, 2006, Plaintiff failed to show it was rescheduled for December 4th 2006, again the plaintiff failed to show and on December 13th 2006 by order of the Arbitrator the plaintiff showed and announces that the Plaintiff would be filing an amended complaint excluding the Defendants New England Equity, Inc, Maureen Clark and Christopher Plummer along with a withdrawal with prejudice of all claims and would exchange of a non-monetary release.

On January 12, 2007 Plaintiff filed said amended complaint in AAA and never filed the release due to the Plaintiffs' instance of a release by New England Equity, Inc of a Judgment obtained against the plaintiff in the prior case in April 2000 which was now approximately 750,000.00 dollars. A scheduling order excluding the Clark, Plummer and NEW England Equity, Inc defendants was issued. A hearing was scheduled for early April 2007 (but was postponed for reasons unrelated);

On April 4, 2007 prior to the Schedule the Plaintiffs council wrote to AAA indicating that a universal settlement was being worked on and that the case was going to be settled by all parties. (Exhibit A Attached). This letter was forwarded to Defendant by another co-defendant (Attorney Hill for Attorney Desalvo) asking if there was any credence to the Dimassa Letter. In direct response to the Dimassa letter to AAA of April

4, 2007, on April 6, 2007 defendant Plummer wrote to AAA indicating that there was no such settlement and the arbitration should proceed (Exhibit B Attached) In direct response to the Defendant Plummer's letter on the very same day Plaintiff council Wrote to AAA advising the arbitrator in writing that it was withdrawing its arbitration claims against all defendants with prejudice (Exhibit C attached) and on April 9, 2007 reiterated the April 6, 2007 letter (Exhibit D, Letter to Ms. Cook dated April 9, 2007). The Defendants unilaterally objected to Plaintiff's withdrawal because (a) the there were still claims pending in federal court, claims that this court ordered to arbitration, and (b) the plaintiff cannot unilaterally withdraw a claim that was ordered to arbitration by this court without also withdrawing the federal court action. Subsequently, by follow-up letter dated April 16, 2007, and email dated May 22, 2007, the plaintiff confirmed that it has withdrawn ALL claims against all defendants Clark, Plummer, New England Equity, Inc and DeSalvo, not simply the arbitration claim. (Exhibit E, Letter to Arbitrator Mazadoorian dated April 16, 2007; and Exh. F, email to Mr. Mazadoorian and counsel dated May 15, 2007).

In the April 6, 2007 letter to AAA the Plaintiff in its email correspondence clearly stated that "As a result of Mr. Plummer's latest communication the cases are not going to be resolved by the execution of the Mutual Release that **we** prepared on the basis of what **we** thought were the most common-sense terms of universal resolution and as ostensibly agreed to by the players involved. Therefore please be advised that I have been instructed by the Claimants to withdraw the above-captioned case with prejudice. Accordingly the Claimant requests that the Arbitrator mark the file withdrawn with prejudice, and enter an appropriate written award consistent with this directive" Prior to the April 6, 2007 correspondence to AAA the plaintiffs council DiMassa was keenly aware that the case would not be resolved by written release where a release of the Defendants judgment against Plaintiff would made.

When Mr. DiMassa could not get the Judgment award released for the Plaintiff (obviously his sole purpose) he sent the April 6, 2007 email clearly indicating the original intent of this five year litigation to attempt to remove the financial indebtedness

of his clients (Massullos) to the Defendants. Plaintiff's council didn't want more counterclaims or awards to enter against his clients and after 5 years of contentious litigation and intentional delay, Plaintiff's council thought this withdrawal was best for his clients. He wasn't ready for a hearing on the eve the hearing and had no intention of going to a hearing. Subsequent to all three emails withdrawing the action with prejudice, Plaintiffs Council (DiMassa) came to find that he and his clients are potentially liable for sanctions and his withdrawal wouldn't protect them.

On June 21, 2007, in a response to Defendant Desalvo Motion for Involuntary Dismissal, Plaintiffs council responded with a pleading which intentionally mislead the Court by *not* telling the truth. In Plaintiffs motion of objection filed on June 21, 2007 Plaintiffs counsel refers to an email letter dated May 29, 2007. Plaintiff intentionally has attempted to avoid the truth and has presented the email as the sole communications between all parties. Plaintiff is now trying to create confusion with a multitude of conference calls and a paper trail wherein Plaintiffs counsel tries to back off his own statements in the numerous letters and by trying to have a withdrawn matter RESCHEDULED FOR HEARING. Clearly, Mr. DiMassa is continuing to perpetuate the wrong. And by trying to have additional AAA hearings scheduled for another date next year when he was clearly not going, nor was he prepared to try the case after 5 years. Delay and coming down to the wire are his tactics as evidenced by the releases which entered 5 years ago in the prior AAA case and the agreement to a judgment with prejudice in favor of former defendant Merrill Lynch. Claimants have no case and never had a case and yet they have used the court system to terrorize the defendants for 10 years.

Defendants DeSalvo, Clark, Plummer, New England Equity are all too keenly aware that a release is not worth the paper it is printed on with respect to these Plaintiffs. A final resolution through the court is the only way to resolve the matter. Plaintiffs council Mr. DiMassa of course wanted releases of the prior Judgment, but any representation that Maureen Clark, Christopher Plummer, Attorney DeSalvo and New England Equity somehow pulled a 'fast one' and wouldn't sign releases flies in

the face of the reality of what has happened the past 10 years. Further, Mr. DiMassa filing without including the April 6, 2007 and the subsequent email is misleading to the court and further sanctionable by continuance of Sanctionable actions.

The Plaintiffs June 21, 2007 Motion of Objection is specifically and intentionally **omitting** the truth by way of other correspondence as defined in this Defendants Motion. Further the Plaintiffs Motion of Objection was filed by Attorney Klingman but was clearly prepared by Mr. DiMassa on his letterhead (See exhibit G Attached). The email dated April 6, 2007....long before all the posturing and letters attached to Mr. DiMassa's June 15, 2007 objection is an attempt to cover-up his vexatious and purposeful action, which was clearly designed as an attempt to seek a release of the judgment award from an Arbitration hearing against his client from the prior AAA case.

Mr. DiMissas actions in this case and the reasoning behind this action have caused the Defendants sever financial hardship, embarrassment, wrongful prosecution and Plaintiffs and their council libelous behavior have impacted all of the defendants adversely. Therefore the Defendants respectively request that this court issue direct punishment in the way of financial sanctions against the Plaintiff, its sole shareholders Edmund Massullo, Anne Marie Massullo and their council Mr. Rudolph Dimassa, Anthony Dimassa and individually and professionally Dimassa & Associates.

Defendant Plummer respectively requests an award in the Amount of $350,000.00 for fees and costs associated with the five years of litigating and $2,000,000.00 dollars for direct damages associated with this vexatious action.

II. **Legal Argument**

The sole Plaintiff, Stamford Holding and their Sole Shareholders Edmund Massullo and Anne Marie Massullo, initiated this federal action via complaint dated January 17, 2002. In its complaint, signed by Plaintiff's counsel Dimassa

The Court should know that the Plaintiff was agreeable to a voluntary dismissal, however, only if the defendants agreed to release its previously obtained Arbitration Award ("Judgment") which is now in excess of $750,000.00 and agree not to pursue any claims against Plaintiff or its counsel (e.g. Rule 11 Sanctions). (See signed Release,

which is part of Exhibit C). The Defendant Plummer would not agree to such obvious and egregious behavior and so discovering this, Plaintiff through their Counsel DiMassa & Associates withdrew all claims with prejudice against all Defendants in AAA, clearly confirming the original intent of the Action before this Court.

## SANCTIONS PURSUANT TO RULE 11

### A. THE PURPOSE OF RULE 11 IS TO DETER BASELESS FILINGS

Essentially, Rule 11(b) of the Federal Rules of Civil Procedure provides that by presenting writing to a court, an attorney is certifying that to the best of his knowledge, after conducting a reasonable inquiry, the writing is not frivolous and that the factual and legal contentions are warranted and supported. (Emphasis). The purpose behind this Rule is to deter baseless filings:

Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'

*Cooter & Gell v. Hartmax Corn.*, 496 U.S. 384, 393, (1990). If the assertions are determined not to be well-grounded in fact or law, Rule 11 is violated and the attorney is subject to sanctions in an amount sufficient to deter future violations. F.R.C.P. 11(c)(2). See, *Cone Corporation v. Hillsborough County*, 157 F.R.D. 533, No. 89-540-CIV-T-17A, Slip. Op. September 16, 1994, 1994 WL 526019, (M.D.FL, 1994)(sanctions to be imposed for baseless assertions of standing, continuing litigation after standing challenged, and purposely misrepresenting a holding and issue - prior to December 1, 1993)[Copy attached]; Rule 11(c)(1)(A).3

### B. SANCTIONS SHOULD BE IMPOSED FOR BASELESS AND MISLEADING FILINGS.

The language of Rule 11 now clearly indicates that the imposition of sanctions is not mandatory. See, *Thomas v. Evans*, 880 F. 2d 1235, 1239 (11th Cir. 1989). However, sanctions should be imposed when an attorney **blatantly** presents baseless pleadings, and/or misrepresents and distorts legal or administrative rulings in an attempt to mislead the Court. See *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091

-9-

(11th Cir. 1994). Attorneys "must make a reasonable inquiry to assure that the claims, defenses and positions represented by them are well-grounded in both law and fact and are not intended to serve an improper purpose, such as harassment or delay." See <u>E.E.O.C. v. Tandem Computers Inc., Slip Op.</u>, No. CIV. A. 92-10745-WGY, Nov. 8, 1994, 1994 WL 631131 (D.Mass. 1994) at page 2 **(penalty of $500.00 and fees, expenses and costs appropriate).**

In determining whether sanctions should be imposed for violations of Rule 11, the test is one of "reasonableness under the circumstances" <u>Donaldson v. Clark</u>, 819 F.2d 1551, 1556 (11th Cir. 1987). In other words, the question is whether it was reasonable for the attorney to believe, at the time the pleadings were filed, that the pleadings were well grounded in fact and law, or presented a good faith argument for extension, modification or reversal of existing law. See, <u>Threaf Properties v. Title Ins. Co. of Minnesota</u>, 875 F.2d 831, 835 (11th Cir. 1989) ($750.00 and $500.00 sanctions upheld). Here, both the Complaint and the Response were baseless when they were filed. Mr. Dimassa caused a federal complaint to be filed for a plaintiff that was a Judgment debtor to the Defendant, Judgment having been obtained in Arbitration from a case with the exact claims from this action. No legal authority existed to support this filing. Any inquiry by Plaintiff's counsel would have revealed that neither the law nor the facts supported a federal action by a defunct Corporation whose sole shareholders were respondents in an arbitration ruling where they the respondents were indebted to this Defendant, moreover the Corporation was indeed named within the original claims made by the Plaintiff in that arbitration and subject to the ruling within the guidelines of the AAA. Thus, the filing of the instant Complaint, alone, justifies the imposition of Rule 11 sanctions.

After the filing of the complaint, counsel's disregard for Rule 11 continued. After counsel for the Defendants raised Plaintiff's lack of standing with Plaintiff's counsel, Mr. Dimassa refused to withdraw or otherwise correct the complaint. Consequently, Defendant Plummer was forced to bring a Motion to Dismiss or for Summary Judgment. Plaintiffs counsel, rather than withdrawing the Complaint when provided with prevailing

law in Defendant's memorandum in support of his motion, counsel responded by presenting baseless assertions and cited matters out of context and misleading to the court. Upon referral to the American Arbitration Association order of this court (per J. Droney) Counsel for Plaintiff did not attempt to have the defendants defenses of res-judicata and standing decided and distinguish as the controlling and deciding authority for the case to proceed, instead plaintiffs counsel prepared and submitted the entire case to the National association of securities dealer in New York, a non related arbitration forum, which caused the Defendant to spend substantial time and money in defense of the claims made before the NASD. Accordingly, such unreasonable and egregious conduct mandates the imposition of appropriate sanctions.

## C. SANCTIONS MAY DETER SIMILAR MISCONDUCT

Under Rule 11, the appropriate sanctions are often financial penalties. <u>Donaldson v. Clark,</u> 819 F.2d 1551, 1557 (11th Cir. 1987). "Imposing a financial penalty often will be the most effective and fair means of enforcing Rule 11 and deterring baseless suits." Id. This unfortunate situation is similar to that recently encountered by the United States District Court for the Northern District of Illinois. <u>Center Video Industrial Company, Inc. v. United Media, Inc.</u>, No. 90 C 6387, Memorandum and Order, 1994 WL 603991, (N.D.Ill. 1994). There, an attorney was sanctioned in the amount of $3500.00 for failing to either read controlling precedent or for ignoring it. The Court then noted that although $3500.00 was more than the defendant spent in causing the dismissal of the egregious filing, "[a]nything less however would not serve the purpose of deterring future violations of this sort." Center Video, WL PAGE 2. Normally, one would assume that a $3500.00 fine would serve as an effective deterrent against ignorance in the future. After all, ignorance is not a defense for a violation of Rule 11, as an attorney must make a reasonable inquiry which should prevent such ignorance. By failing to make such an inquiry or by ignoring the results, one has failed to satisfy his affirmative duties under Rule 11. That one may be incompetent in, or ignorant of, a particular area of law is also no excuse for an attorney who agrees to accept and

prosecute a case - for that person should be presumed to know the law. See *Saltany v. Reagan, 886 F.2d 438, 440* (D.D.C. 1989).

Yet, even after Plaintiff's counsel was provided with prevailing law, counsel decided not to withdraw or otherwise correct the egregious writings, but chose deliberate subterfuge instead. Accordingly, the Court is faced not with mere sanctionable ignorance or incompetence, but rather is faced with the flagrant disregard for and rejection of the dictates of Rule 11. "[S]anctions should be 'educational and rehabilitative in character, and as such, tailored to the particular wrong.'" *Markwell v. County of Bexar, 878 F.2d 899, 903* (5th Cir. 1989)($1000.00 for shotgun pleading approach). Conduct like Mr. Dimassa cannot be countenanced by any attorney or Court. Thus, a penalty in excess of $3500.00 paid to Defendant, and an order enjoining Plaintiff's counsel from charging Plaintiff for filing the complaint and for services rendered in these proceedings, may serve to rehabilitate counsel and deter any future misconduct. See Markwell, at 900.6

## D.    SANCTIONS AGAINST CHALLENGES OF ARBITRATION AWARDS.

Two courts have said they've had enough of appeals from parties who have lost at arbitration, have no legal basis for attacking the award, and take it to court anyhow. The 11th Circuit has issued a warning: "this Court is exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards. The warning this opinion provides is that in order to further the purposes of the FAA and to protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases." *B.L. Harbert Intl v. Hercules Steel* (11th Cir 02/28/2006), in which one of the parties did not like the way the arbitrator interpreted a contract, and fought it all the way up to the federal court of appeals.

In this Complaint the Plaintiffs council knew full well that the Defendant had obtained a judgment against Plaintiff in a prior Arbitration Ruling and Plaintiff council intentionally brought suit in the Eastern District of Pennsylvania for the exact claims made within the original case (almost verbatim). Knowing this the tactic which was

proved in the most recent communications from Plaintiffs Council to the AAA was confirmation that due to the fact that Defendant Plummer would not release the Judgment obtained from the prior case in AAA that the Plaintiff would be Withdrawing with Prejudice all claim made within this Complaint. Here Mr. Dimassa clearly did not bring the complaint on any factual basis but merely to intimidate and extort a release from Defendant Plummer in order that the Defendant could get the plaintiff out of their lives, Mr. Dimassa thought that if he made enough trouble and costs the Defendant enough time and money in defense of such a frivolous case that the Defendant would fold and give in to the Plaintiff. Mr. Dimassa's to lack of respect for the judicial process and abuse of the system is in its self sanctionable and such sanctions should be severe. Further, a California court of appeal did award sanctions, saying:

"Courts have repeatedly instructed litigants that challenges to the arbitrator's rulings on discovery, admission of evidence, reasoning, and conduct of the proceedings do not **lie**. [citations omitted.] Plaintiffs' crude attempt to characterize their claims so they would fall within acceptable bases for an appeal is an artifice we condemn. Further, most of plaintiffs' claims are patently disingenuous." Evans (California Ct App 11/21/2005). **The imposed sanctions: (1) Attorney fees, costs and (2) an equal amount as a sanction.**

In the case <u>Pierce v. Commercial Warehouse</u>, 142 F.R.D. 687 (M.D.Fla. 1992) establishes the attorney's duty under Rule 11 to support a lawsuit with existing law. The court held that an attorney cannot mislead the court by contending that his or her argument is supported by existing law, in the sense that the issue has been decided, when that is not true. An attorney must be clear in presenting the argument for what it is. If acceptance of the argument would require extension, modification, or reversal of existing law, Rule 11 requires disclosure and precludes presentation of the argument as though it rested on existing law. In this case Mr. Dimassa has only provoded argument which clearly is baseless and misleading to the court and totally devoid of all facts further as late as his June 15, 2007 response to Attorney Desalvos Motion for Involuntary Dismissal where he intentionally states "Stamford has confirmed its intention

13

to withdraw all claims against her, **subject only to the proviso** that the parties mutually agree to release all claims between each other" this is clearly a further example of intentionaly misleading the court as the facts simply do not support such rediculous pleadings and therefore warrents sanctions.

E.     **IMPROPER PURPOSE AND TACTICS**

If a frivolous lawsuit is not presented as described to this point, pleadings and tactics of another ilk will mandate Rule 11 sanctions. The second ground for Rule 11 sanctions is a lawsuit or pleadings filed for an improper purpose. In Boese, supra, the court held that an improper lawsuit is presented when an attorney/client files any document, pleading, or motion for the purposes of delay, harassment, or increasing the costs of litigation. A lawsuit started for legitimate purposes can turn into a candidate for sanctions.

Fundamentally, a party cannot use litigation or litigation techniques to punish the opposing party. The playing field is leveled by this--a well padded party cannot litigate for the purpose of grinding the rest of us into submission. A party genuinely harassed with needless litigation should petition the court for sanctions under Rule 11. At the least, this may help to define the limits allowable by the court for the balance of the case. It helps when the court (if not ready to sanction) admonishes, "You are this close, and that is as close as you want to get! " At best, improper behavior or the entire litigation may be stopped.

Improper litigation includes requests for excessive discovery, filing unnecessary motions, filing a lawsuit and dismissing it only to refile it later, and other dilatory tactics that cause litigation to hang over a party's head. The courts will find these tactics abusive under Rule 11, or local court rules, and will impose sanctions. That said, Rule 11 does not mean that a party cannot bring a lawsuit to pressure the opposing party to settle a dispute. In <u>Gillette Foods v. Bayernwald-Fruchteverwertung</u>, 977 F.2d. 809 (3rdCir. 1992), this issue was determined. In *Gillette Foods*, a food distributor filed a lawsuit against a wholesaler over a sales agreement dispute. The district court said the lawsuit was without merit and awarded the wholesaler $50,000 in attorney's fees.  In

this Complaint and as evidenced by Mr. Dimassal past history this case was indeed brought to only achieve one conclusion, a release of the prior Arbitration Judgement obtained by Defendnat Pl;ummer against the Plaintiff. Therefore severe sanctions are appropriate.

**F.    ATTORNEY AND CLIENT BOTH LIABLE**

The two grounds for sanctions under Rule 11 now behind us, it is important to establish what persons are liable for bringing frivolous or maintaining improper lawsuits. Rule 11's hook is double barbed. Rule 11 clearly establishes liability for *any* person who signs a pleading, motion, or other paper. Thus, a client and/or attorney can be sanctioned by the court. In <u>Navarro Ayala v. Hernandez Colon</u>, supra, is an instructive example of sanctions against a client. In *Navarro Ayala*, the Assistant Secretary of Mental Health for Puerto Rico signed a document certifying that patients could leave a hospital any time they wanted to leave. This was a factual matter. The Assistant Secretary told his attorney that he had reservations about signing the document, but his lawyer assured him it was proper to sign. The court found that the document was not entirely accurate, factually. Therefore, the document misled the court. The court imposed $20,000 in sanctions against the Assistant Secretary under Rule 11. The attorney was not sanctioned. The court was willing to sanction a client, even when his attorney assured him it was acceptable to sign the document. This is an excellent example of the court's desire to enforce Rule 11. The courts are not inclined to excuse a party due to extenuating circumstances, as evidenced in *Navarro Ayala*. Even if a client signs a document, regardless of an attorney's advice, he can be liable for Rule 11 sanctions, and the court is required to sanction the signer

Any attorney or "pro se" party in a U. S. District Court lawsuit is bound by the Federal Rules of Civil Procedure (FRCP). Rule 11 states that the filing of a pleading or document is an automatic representation and certification that:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Sanctions are appropriate where a Party "who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or . . . continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation ..." ....and where "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . ." <u>Christiansburg Garment Co. v. EEOC, 434 US 412 (1978)</u>.

### G.  SANCTIONS ARE APPROPRIATE WHERE PLEADINGS ARE MISLEADING

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record and in the attorney's individual name[.] . . . . [T]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable

attorney's fee. Even if the district court finds evidence to be insufficient for purposes of summary judgment, that "does not mean that appellants' claims were factually unfounded for purposes of Rule 11." <u>Stitt v. Williams,</u> 919 F.2d 516, 527 (9th Cir. 1990).

A district court may impose monetary sanctions, in the form of attorneys' fees, upon plaintiffs who file claims that are "frivolous, unreasonable, or without foundation." See <u>EEOC v. Bruno's Restaurant</u>, 13 F.3d 285, 287 (9th Cir. 1993) (quoting <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421-22 (1978)).

### III. CONCLUSION

This case involves Plaintiffs claims which were clearly litigated some seven years ago. After long and contentious pleadings the case was transferred to the American Arbitration Association and a judgment was entered against the Plaintiff in this matter, said arbitration ruling went so far as to indicate, that the Plaintiff in this case Edmund and Anne Marie Massullo were "Not Credible". Judgment was entered and a foreign Judgment was issued in the domicile of Plaintiff, in an attempt to avoid collection of said judgment the Plaintiff concocted with their counsel, Dimassa & Associates a scheme to extort a release for the Defendants and avoid paying the underling Judgment. Now some five years later after considerable costs fees and time, Dimassa has indicated that their client is unable to continue to pay for his services and that because it was made clear to Him (Dimassa) that Defendant Plummer, Clark, Desalvo and New England Equity, refuse to cave to his (Dimassa and Plaintiff) demands then he (Dimassa and Plaintiff) withdraw with Prejudice the action. Now realizing the seriousness of his actions he is now seeking to resurrect this Dead horse, in an effort to now avoid the obvious and right sanctions which this Defendant has requested of this court.

The Courts have consistently admonished and sanctioned Plaintiffs and their Counsel for the very same tactics, lies and schemes which the Plaintiff and their counsel have undertaken in this case, there is clear evidence of the wrongdoings of the Plaintiff and their counsel and severe Sanctions should be imposed.

WHEREFORE, for the foregoing reasons, the undersigned defendant respectfully requests an order:

(1) Directing Anthony Dimassa and Rudolph Dimassa and the Law Firm of Dimassa & Associates, along with Plaintiff Stanford Holding, Edmund Massullo and Anne Marie Massullo to pay to the Defendant Plummer reimbursement of fees and costs in the sum not less than three Hundred and Fifty Thousand ($350,000.00) ; and

(2) Directing Anthony Dimassa and Rudolph Dimassa and the Law Firm of Dimassa & Associates, along with Plaintiff Stanford Holding, Edmund Massullo and Anne Marie Massullo to pay to the Defendant Plummer Punitive damages for Liable in a sum not less than Two Million Dollars ($2,000,000.00) ; and

(3) Enjoining Anthony Dimassa and Rudolph Dimassa and the Law Firm of Dimassa & Associates, along with Plaintiff Stanford Holding, Edmund Massullo and Anne Marie Massullo from ever bringing any claims against Defendant Plummer an any other co defendant in this action for any reason from the beginning of time to present.

RESPECTFULLY SUBMITTED,
CHRISTOPHER PLUMMER

By _____
Christopher Plummer
P.O. Box 627
Niantic, Connecticut 06357
860-857-6704

## CERTIFICATION

I hereby certify that on June 29, 2007 a copy of foregoing motion was and served by mail on all parties.

Douglas H. Riblet, Esq.
Curtin & Heefner
250 North Pennsylvania Avenue
P. O. Box 217
Morrisville, PA  19067-0217

**For Maureen Clark, Christopher Plummer and New England Equity, Inc.**

Rex F. Brien, Esq.
James W. Christie, Esq.
Christie, Pabarue, Mortensen &
  Young
1880 JFK Blvd., 10th Floor
Philadelphia, PA  19103

**For Charles J. Irving, Esq.**

James E. Miller, Esq.
Patrick A. Klingman, Esq.
Sheperd Finkelman Miller & Shah-Chester
65 Main St.
Chester, CT 06412

**For Stamford Holding Company**

Edward R. Scofield, Esq.
Zeldes, Needle & Cooper
1000 Lafayette Blvd., Suite 500
PO Box 1740
Bridgeport, CT 06601-1740

**For Charles J. Irving, Esq.**

Rudolph J. DiMassa, Esq.
DiMassa & Associates, Ltd.
1305 Locust Street, 4th Floor
Philadelphia, PA  19107

**For Stamford Holding Company**

David G. Hill, Esq.
Halloran & Sage  LLP
One Goodwin Square
Hartford, CT 06103-4303
Telephone: 860-522-6103
Fax: 860-548-0006

_____
Christopher Plummer