# Exhibit  E

**Croxford, Edie K.**

**From:**     CMECF@ctd uscourts gov
**Sent:**     Wednesday, September 07, 2005 3:05 PM
**To:**       CMECF@ctd uscourts gov
**Subject:**  Activity in Case 3:02-cv-01236-CFD Stamford Holding Co v. Clark, et al "Order on Motion to Dismiss"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### District of Connecticut

Notice of Electronic Filing

The following transaction was received from Droney, Christopher entered on 9/7/2005 at 3:04 PM EDT and filed on 9/7/2005
**Case Name:**      Stamford Holding Co v. Clark, et al
**Case Number:**    3:02-cv-1236
**Filer:**
**Document Number:** 126

**Docket Text:**
ORDER denying [119] Motion to Dismiss, without prejudice. The court will entertain a similar motion if arbitration is not pursued expeditiously. The parties shall also file a status report within 21 days. . Signed by Judge Christopher F. Droney on 9/7/05. (Droney, Christopher)

The following document(s) are associated with this transaction:

**3:02-cv-1236 Notice will be electronically mailed to:**

Rex F. Brien    rfbrien@cpmy.com,

James W. Christie    jwchristie@cpmy.com,

Rudolph J. DiMassa    dimassa13@aol.com,

Jill Hartley    jhartley@sabiahart.com,

David G. Hill    hill@halloran-sage.com, ecroxford@halloran-sage.com

James E. Miller    jmiller@sfmslaw.com

Douglas H. Riblet    dhr@curtinheefner.com,

James Scott Rollins    james.rollins@bingham.com,

6/28/2007

Edward R. Scofield     escofield@znclaw.com,

June M. Sulliva! n     Sullivan@halloran-sage.com, polini@halloran-sage.com

**3:02-cv-1236 Notice will be delivered by other means to:**

# Exhibit  F



# HALLORAN
# &SAGE LLP

### ATTORNEYS AT LAW

DAVID G. HILL  Direct 860 297-4628  hill@halloran-sage.com

November 7, 2006

The Honorable Christopher F. Droney
United States District Judge
450 Main Street
Hartford, CT 06103

Re: *Stamford Holding Company v. Maureen Clark, Christopher Plummer,*
*New England Equity, Inc., and Ramona DeSalvo*
Civil Action No.  :  3:02-CV-1236 (CFD)
AAA Case No.    :  12-199-Y-00156-05
Our File No.      :  10361.0082

Dear Judge Droney:

Your Honor invited counsel to provide status reports on October 3, 2006. The intent in doing so, I believe, was in response to our complaining about the numerous delays involved in this litigation. In compliance with your order, I believe most, or all counsel, submitted their status reports. However, another development has led me to provide a supplemental report to Your Honor.

The American Arbitration Association has been trying to coordinate a conference call with counsel for several months. Unfortunately, AAA had difficulty coordinating this call because of scheduling difficulties. From our perspective, the difficulties were with the plaintiff, whose availability was limited. Nevertheless, the AAA Case Manager finally found a date that fit all schedules, that being November 2, 2006. Mind you, this date was four months after AAA first inquired about counsels' availability.

The instructions to all counsel were clear, AAA would initiate a phone call at 3:00 p.m. If counsel were not in their office, they were given a phone number to call to coordinate the conference. As expected, everybody participated EXCEPT THE PLAINTIFF. As a result, we have encountered yet another delay.

The conference call has been rescheduled for November 27, 2006. If the plaintiff does not participate, I will ask the court to entertain our Motion to Dismiss once again. In and of itself, the aborted conference call is not significant, assuming of course counsel forget. However, in light of the numerous delays, it is yet another example of the plaintiff's stalling tactics. The court first ordered arbitration in 2002. Four years later, we are no closer to resolution than we were back then. I should also mention that the plaintiff has not advised counsel or AAA why he was unavailable.

One Goodwin Square, 225 Asylum Street, Hartford, Connecticut 06103   860 522-6103   Fax 860 548-0006   www.halloran-sage.com
Hartford / Middletown / Westport / Washington, D.C.

The Honorable Christopher F. Droney
November 7, 2006
Page 2


    In short, I am taking the unusual step of supplementing our prior report in
anticipation of additional delays in the future.  I apologize for occupying the court's time,
but in light of this latest development, I felt it was warranted.

    Thank you for your attention to this matter.  Thank you for your consideration.

                                        Very truly yours,

                                        David G. Hill

DGH/ekc

cc:    Anthony M. Di Massa, Esq.
       Christopher Plummer, Esq.
       Patrick A. Klingman, Esq.
       Michael D. Blanchard, Esq.
       Douglas H. Riblet, Esq.
       Edward R. Scofield, Esq.
       James W. Christie, Esq.
       Rex F. Brien, Esq.
       James E. Miller, Esq.

909957v 1

# Exhibit  G

1          AMERICAN ARBITRATION ASSOCIATION
                CASE NO. 12-199-93-99

2

3    - - - - - - - - - - - - - - - - - X
     NEW ENGLAND EQUITY, INC.          :
4    MAUREEN CLARK and CHRISTOPHER PLUMMER :
     VS                                :
5    EDMUND and ANN MARIE MASSULO       :
     MANAGEMENT, INC.                   :
6    - - - - - - - - - - - - - - - - - X

7

8                   HELD AT:  THE AMERICAN ARBITRATION
9                   ASSOCIATION, 111 FOUNDERS PLAZA,
                    EAST HARTFORD, CONNECTICUT, ON
10                  APRIL 5, 2000

11

12   APPEARANCES:

13   THE ARBITRATOR:

     JOHN CROSSKEY, ESQ.
14   12 Chesbro Avenue
     Noank, CT  06340-5709
15

     SQUIRE, SANDERS & DEMPSEY, L.L.P.
16   127 Public Square
     Cleveland, OH 44114-1304
17   Richard Gurbst, Esq., and
     Harris A. Senturia, Esq.
18

     ROTATORI, GRAGEL & STOPER CO., L.P.A.
19   526 Superior Avenue East
     Cleveland, OH  44114-1498
20   Robert J. Rotatori, Esq., and
     Richard L. Stoper, Jr., Esq.

21

22

23

24                  Reporter:  WENDY J. ALLEN, RPR
                    BRANDON REPORTING SERVICE
                         11A Capitol Avenue
25                  Hartford, Connecticut 06106
                          (860) 549-1850

                  Brandon Reporting Service

                   EXHIBIT  A

1          MR. GURBST:  The resolution of the

2   claims and counterclaims in this matter, including the

3   counterclaims that were proffered and yet to have been

4   ruled on in the amended counterclaim, are taken care

5   of by this settlement, as well as any claims by the

6   Massulos in a federal court action pending in the

7   Northern District of Ohio assigned to the docket of

8   Judge Solomon Oliver with respect to the following

9   defendants or potential defendants are also resolved:

10  Attorney Ramona DeSalvo, Christopher Plummer, Maureen

11  Clark, Pacific Assets, and New England Equity.

12          In exchange for dismissal of the claims

13  here and a mutual release of all claims against those

14  defendants in the federal court action, plus a payment

15  of $125,000 from the Massulos to a designee as

16  designated by New England Equity, who will determine

17  as to who they want that check to go to, as well as up

18  to $50,000 of any funds recovered from Attorney

19  Charles Irving or his law firm by way of judgment or

20  settlement in that same federal court action, said sum

21  to be paid, again, as designated by New England

22  Equity.

23          If the sum to be recovered is less than

24  $50,000 by settlement or judgment, there is an

25  agreement that the Massulos and the New England Equity

1    will split that $50,000.  No settlement of the Massulo

2    claims against Charles Irving or his law firm will

3    occur without a full release running from Mr. Irving

4    and his law firm to the aforementioned Ramona DeSalvo,

5    Christopher Plummer, Maureen Clark, Pacific Assets and

6    New England Equity.

7              Ramona DeSalvo, Christopher Plummer,

8    Maureen Clark, Pacific Assets and New England Equity

9    will be indemnified by the Massulos against any

10   judgment by Charles Irving or his law firm derived

11   from and because of any claim asserted by the Massulos

12   against Charles Irving.

13             Is that right, or is that not your

14   understanding, that is that's the indemnification

15   protection?

16             MR. ROTATORI:  That represents the

17   indemnification protection.

18             MR. GURBST:  Correct.

19             MR. ROTATORI:  That you've just

20   recited.

21             MR. GURBST:  Correct.

22

23

24

25

Brandon Reporting Service

4

C E R T I F I C A T E

    I, WENDY J. ALLEN, Registered Professional
Reporter, do hereby certify that the foregoing
testimony is a true and accurate transcription of my
stenographic notes to the best of my knowledge and
ability.


    WITNESS MY HAND this 5th day of April, 2000.


Wendy J. Allen, RPR

AMERICAN ARBITRATION ASSOCIATION

NEW ENGLAND EQUITY, INC.,                       NO. 12 199 00093 99
MAUREEN CLARK AND
CHRISTOPHER PLUMMER,

AND

DR. EDMUND MASSULLO AND
ANNE MARIE MASSULLO                             JULY 19, 2000

## DECISION OF THE ARBITRATOR REGARDING
## CLAIMANTS' MOTION FOR AWARD ON SETTLEMENT

On or about May 23, 2000, Claimants filed and served on Respondents a motion to
confirm "as binding and enforceable the terms of the settlement reached on the record before the
Arbitrator on April 5, 2000," (Claimants' Motion for Award on Settlement (hereinafter
"Claimants' Motion") at 1.) attaching a copy of the transcript of settlement on April 5, 2000,
Exhibit A hereto. Claimants also seek $2,500 for costs and fees incurred resulting from the
Respondents' failure or refusal to abide by the clear terms of the negotiated and recorded
settlement. (Claimants' Motion at 3-4.)

Respondents had previously filed and served on Claimants, on or about May 17, 2000,
Notice of Dr. Edmund Massullo, Anne Marie Massullo, and Mystic Investment Corp. Regarding
Status of Case ( hereinafter " Notice"). In their Notice, Respondents asserted two "factual bases"
upon which they claimed the settlement was premised, which they claimed had not been
"substantiated" and therefore asserted that the settlement could not be concluded. (Notice at 2.)

Respondents first asserted, in regard to the indemnification sought by the Clark parties
"Dr. Massullo was not present at the session"; "Anne Marie Massullo did not know of this

1

provision"; and "it is clear that undersigned counsel did not explain adequately and fully the existence of the indemnification provision as part of the settlement as well as the significance and ramifications of such provision on the other litigation in which the Massullos were parties." (Notice at 1.) Secondly, Respondents asserted that "counsel for the Clark parties requested as a term of settlement that the civil action in the U.S. District Court for the Northern District of Ohio against Ramona DeSalvo be dismissed on the ground that DeSalvo had no legal malpractice insurance and was otherwise uncollectable. . . . [and] DeSalvo has refused to provide an affidavit to substantiate the representations regarding her insurance and collectability." (Notice at 2.)

### Respondents' First Assertions

1. Dr. Massullo was not present at the session. Dr. Massullo was not prohibited from attending the session on April 5, 2000. Requests to postpone previous hearings were granted because Dr. Massullo's counsel represented that Dr. Massullo was recovering from a medical condition which made it difficult for him to travel from Cleveland, Ohio to Hartford, Connecticut for the arbitration session. No such request was made for the session on April 5, 2000. Dr. Massullo was represented by two attorneys at the April 5, 2000 session. Dr. Massulo's physical absence does not make the April 5, 2000 settlement agreement unenforceable.

2. Anne Marie Massullo did not know of this provision. Mrs. Massullo was present on April 5, 2000 and represented by two attorneys. When the terms of the settlement were read into the record, she and the Massullos' attorneys were present. The indemnification provisions of the settlement were recited in her presence and acknowledged by the Massullos' attorney in her presence. (Exhibit A, Transcript at 3, line 7 through line 21.) The statement that she did not know of this provision is not credible.

2

3. Undersigned counsel did not explain adequately and fully the existence of the indemnification provision as part of the settlement as well as the significance and ramifications of such provision on other litigation in which the Massullos were parties. This is not a valid basis on which to void an enforceable settlement agreement.

### Respondents' Second Assertion

Respondents assert that "counsel for the Clark parties requested as a term of settlement that the civil action in the U.S. District Court for the Northern District of Ohio against Ramona DeSalvo be dismissed on the ground that DeSalvo had no legal malpractice insurance and was otherwise uncollectable." (Notice at 2.) The settlement by its terms included the resolution of any claims by the Massullos in a federal court action pending in the Northern District of Ohio assigned to the docket of Judge Solomon Oliver with respect to Attorney Ramona DeSalvo. (Exhibit A, Transcript at 2, lines 1 through lines 11.) Respondents had ample opportunity to state that any release by the Massullos of DeSalvo was conditioned on her having no legal malpractice insurance and or being "otherwise uncollectable." Respondents stated no condition to their release of their claims against Attorney Ramona DeSalvo. (Exhibit A, Transcript.)

1. The subsequent written draft settlement agreement submitted by Claimants is irrelevant. Respondents in a Memorandum served and filed on or about May 25, 2000 (hereinafter May 25th Memorandum), suggest that a subsequent written draft submitted by Claimants' counsel to Respondents' counsel for signature by the parties refutes Claimants' position that all of the terms of the settlement were included in the transcript. Even if true that the written draft included additional terms, Claimants' are asking only for an award based on Exhibit A, the April 5, 2000 transcript of settlement. Therefore, this claim of Respondents is

3

irrelevant.

2. Attorney DeSalvo's legal malpractice insurance was discussed during the settlement negotiations. Respondents' counsel claims Claimants' counsel represented that DeSalvo had no legal malpractice insurance. (Notice at 2; May 25th Memorandum at 2; and Supplemental Memorandum served and filed on or about June 5, 2000.) Claimants' counsel states in a memorandum served and filed on or about June 1, 2000 at 5: "What Claimants' counsel told Respondents' counsel during the negotiation of the settlement agreement at issue is that Claimants' counsel had no further information from Attorney DeSalvo on this question, not that she had no insurance." Although the parties have differing recollections about what specifically was said about Attorney DeSalvo's legal malpractice insurance, both concede that it was discussed by the parties during the negotiations.

3. Respondents' counsel knew Attorney DeSalvo had professional malpractice insurance. Respondents' counsel knew from the Notice of Possible Change of Counsel and Request for Ruling or Extension on Behalf of Attorney DeSalvo filed on January 4, 2000 in the U.S. District Court for the Northern District of Ohio, Eastern District, before Judge Solomon Oliver, Jr. involving these parties that Attorney DeSalvo had professional malpractice insurance.

Respondents imply they would not have agreed to release their claims against Attorney DeSalvo without an affidavit from her substantiating that she had no legal malpractice insurance and was otherwise uncollectable. (Notice at 2.) For all of the above reasons, if it was important that Respondents' release of their claims against Attorney DeSalvo be conditioned on an affidavit that she has no legal malpractice insurance and is otherwise uncollectable, Respondents should have made such requirements an express part of the settlement agreement on April 5, 2000. They

4

did not do so.

## Conclusion

The Supreme Court of Connecticut said in <u>Audubon Parking Assocs. v. Barclay and Stubbs, Inc.</u>, 225 Conn. 804, 809; 626 A.2d 729, 732:

> A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings.

Respondents' claims do not raise any ambiguities in the settlement agreement of April 5, 2000. Therefore, the settlement agreement reached on April 5, 2000, as reflected in the Transcript attached as Exhibit A, is enforceable as a matter of law.

Claimants do not assert that there is a provision in the settlement agreement allowing the award of costs and fees. Claimants have submitted no authority for their request for costs and fees in the amount of $2,500. Absent such a provision or some other authority, there is no support for awarding costs and fees. <u>Audubon Parking Assocs. v. Barclay and Stubbs, Inc.</u>, 225 Conn. 804, 813; 626 A.2d 729, 734 (1993).

## AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement contained in a written contract, dated October 18, 1993, and contained in a written addendum to said contract, dated March 18, 1994 between the above-named parties, and having been duly sworn and having duly heard the proofs and allegations of the parties, AWARD and confirm as binding and enforceable the terms of the settlement reached on the record before the undersigned arbitrator on April 5, 2000 and set forth in the Transcript, Exhibit A hereto.

This Award is in full and final settlement of any and all claims submitted to this

Arbitration.

John Crosskey, Arbitrator                    Dated:

# Exhibit  H

FILED

99 NOV 23 AM 10: 10

CLERK... ....:.. ET COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DR. EDMUND MASSULLO<br>4410 Yakata Doro<br>Boardman, OH  44511 | ) **4:98CV 2690**<br>) CASE<br>) |
| and | ) JUDGE **JUDGE MATIA**<br>) |
| ANNE MARIE MASSULLO<br>4410 Yakata Doro<br>Boardman, OH  44511 | ) **MAG. JUDGE HEMMANELLI**<br>) |
| v. | ) |
| MAUREEN CLARK<br>123 Tipping Rock Road<br>Stonington, CT  06378-2943 | ) |
| and | ) |
| CHRISTOPHER PLUMMER<br>157 Sheraton Lane<br>Norwich, CT  06360-6446 | ) |
| and | ) |
| NEW ENGLAND EQUITY, INC.<br>123 Tipping Rock Road<br>Stonington, CT  06378-2943 | ) |
| and | ) |
| CHARLES J. IRVING<br>181 Broad Street<br>New London, CT  06320 | ) COMPLAINT FOR MONEY DAMAGES<br>) (WITH REQUEST FOR JURY DEMAND<br>) ENDORSED HEREON) |

```
                                    )
        and                         )
                                    )
    RAMONA E. DESALVO               )
    57 Boston Post Road             )
    Waterford, CT  06385            )
                                    )
        and                         )
                                    )       .
    MERRILL LYNCH                   )
    c/o CT Corporation System       )
    1300 E. 9th Street              )
    Cleveland, OH  44114            )
                                    )
        Defendants.                 )
```

## STATEMENT OF THE CASE

1.      This case arises from a series of acts constituting conversion and breach of fiduciary duty perpetrated on Dr. Edmund Massullo and his wife Anne Marie Massullo by defendants Maureen Clark, Christopher Plummer and their corporation New England Equity, Inc. under the guise and pretense of managing the financial affairs of the Massullos, in particular real properties owned by them. Defendants Charles Irving, Ramona DeSalvo, and Merrill Lynch are necessary parties hereto because at relevant times these defendants held and/or continue to hold assets belonging to the Massullos, including, but not limited to securities, monies, and/or financial and other business documents belonging to the Massullos.

## PARTIES

2.      Dr. Edmund Massullo is a citizen of Ohio residing 4410 Yakata Doro, Boardman, Ohio.

3.      Anne Marie Massullo, the wife of Dr. Edmund Massullo, is a citizen of Ohio residing at 4410 Yakata Doro, Boardman, Ohio.

2

4.      Maureen Clark is a citizen of Connecticut.

5.      Christopher Plummer is a citizen of Connecticut.

6.      New England Equity, Inc. is a corporation with its principal place of business in
Connecticut. Upon information and belief, Clark and Plummer are officers, shareholders and
employees of New England Equity, Inc.          .

7.      Charles J. Irving is a citizen of Connecticut and an attorney at law who has at
various times relevant to this case represented Dr. and Mrs. Massullo, various entities in which
they had ownership interests, and Maureen Clark.

8.      Ramona E. DeSalvo is a citizen of Connecticut and an attorney at law who has at
various times relevant to this case represented Dr. and Mrs. Massullo, various entities in which
they had ownership interests, and Maureen Clark.

9.      Merrill Lynch is a broker in securities which operates an office in New London,
Connecticut. Daniel Adams is the Merrill Lynch representative who handled funds in which Dr.
and Mrs. Massullo had an interest.

## JURISDICTION

10.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 as the
parties hereto are citizens of different states and the matter in controversy exceeds the sum of
$75,000, exclusive of interest and costs.

## VENUE

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a
substantial part of the events or omissions giving rise to the claims occurred in this district.

3

## FIRST CLAIM

### (Breach of Fiduciary Duty)

12.   During the early 1990s, defendants Clark, Plummer and New England (hereinafter

"the Clark defendants") entered into a relationship with Dr. and Mrs. Massullo whereby the

Clark defendants represented the Massullos' interests in connection with the management of

various assets and liabilities of the Massullos.

13.   The Clark defendants were agents of the Massullos and controlled the disposition

of funds received by or on behalf of the Massullos.

14.   As agents, the Clark defendants owed the Massullos a fiduciary duty to act in the

best interests of the Massullos.

15.   The Clark defendants breached these fiduciary duties to Dr. and Mrs. Massullo, by,

among other things:

   a)   Using funds belonging to the Massullos, in particular funds from Dr.
        Massullo's retirement account, to discharge debts owed by Clark to
        attorney Charles Irving and possibly others;

   b)   Disbursing to themselves for their personal use funds from accounts in the
        name of Stamford Holdings Corporation, a corporation wholly owned by
        Dr. Edmund Massullo;

   c)   Withholding documents from the accountants of Dr. and Mrs. Massullo,
        which documents were necessary for the proper completion of the
        Massullos' tax returns. The absence of such documents has frustrated and
        prevented the completion of the relevant tax returns, thereby putting the
        Massullos at risk of penalties and interest for the delay in filing such
        returns;

   d)   Failing to turn over to legal counsel for Dr. and Mrs. Massullo all
        documents pertaining to matters handled by the Clark defendants for the
        Massullos; and

4

  e)  Withholding from Dr. and Mrs. Massullo securities and other documents establishing their interests in Stamford Holdings Corporation, Pacific Assets, Inc. and any other entity in which Dr. and Mrs. Massullo have an interest.

  16.  Wherefore, as a result of these breaches of fiduciary duty by the Clark defendants, Dr. and Mrs. Massullo have suffered damages in an amount in excess of $75,000, the amount of which will be determined by the evidence at trial.

  17.  The Clark defendants acted with malice, aggravated or egregious fraud, or insult and are thereby liable to Dr. and Mrs. Massullo for punitive damages, attorney fees, and costs.

SECOND CLAIM

(Conversion)

  18.  Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 17 of the complaint as set forth above.

  19.  By virtue of the misuse of funds belonging to Dr. and Mrs. Massullo, as more fully set forth hereinabove, the Clark defendants have converted to their personal use monies belonging to Dr. and Mrs. Massullo.

  20.  Wherefore, as a result of the conversion of funds by the Clark defendants, Dr. and Mrs. Massullo have suffered damages in an amount in excess of $75,000, the amount of which will be determined by the evidence at trial.

  21.  The Clark defendants acted with malice, aggravated or egregious fraud, or insult and are thereby liable to Dr. and Mrs. Massullo for punitive damages, attorney fees, and costs.

5

## THIRD CLAIM

### (Action on Notes Against Maureen Clark)

22. Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 21 of the complaint as set forth above.

23. On or about January 8, 1994, Maureen Clark signed and guaranteed promissory notes in favor of Dr. Massullo in the principal amount of $1.6 million.

24. Dr. Massullo alleges that those notes are in the possession of his attorney Charles Irving, who, despite requests, has refused to turn over the notes to Dr. Massullo.

25. Upon information and belief, Dr. Massullo alleges that the obligations on those notes are due and payable and that Clark has not made the required payments under the terms of those notes.

26. Wherefore, Dr. Massullo seeks damages of $1.6 million plus interest against Maureen Clark.

## FOURTH CLAIM

### (Accounting)

27. Plaintiffs reallege and incorporate herein by reference the allegations of paragraphs 1 through 26 of the complaint as set forth above.

28. Defendants Clark, Plummer, New England Equity, Irving, Merrill Lynch and DeSalvo have, at various times, had in their possession funds, securities, and/or other properties belonging to Dr. and Mrs. Massullo, as well as documents relating to those items. Those funds may have been in the name of the Massullos, corporations or other entities in which the Massullos

6

have some interest, or may have been in the name of Maureen Clark which funds she represented to be her own.

    29.    As a result of the breaches of fiduciary duty and conversion set forth above, Dr. and Mrs. Massullo are entitled to an accounting from the defendants of all monies, properties, securities, or other assets which came into defendants' possession from or on behalf of the Massullos, the Clark defendants, Stamford Holdings Corporation, Pacific Assets, Inc., and/or any corporation or entity in which the Massullos had an interest or were represented as having an interest, as well as possession of any and all documents relating to those assets.

    WHEREFORE, Dr. and Mrs. Massullo request relief as follows:

    1)    Compensatory damages in an amount in excess of $75,000, to be proven at trial;

    2)    Punitive damages;

    3)    Attorney fees and costs;

    4)    An accounting as requested in the Fourth Claim of the complaint; and

    5)    Such other relief as the Court deems appropriate.

    Respectfully submitted,

    GOLD, ROTATORI & SCHWARTZ CO.,
        L.P.A.
    By:  Robert J. Rotatori, Ohio Bar Reg. No. 0003346
        Richard L. Stoper, Jr. Ohio Bar Reg. No. 0015208
    1500 Leader Building
    Cleveland, Ohio 44114
    (216) 696-6122

    Attorneys for Plaintiffs Dr. Edmund and Anne Marie
    Massullo

7

## JURY DEMAND

Plaintiffs hereby request a jury in the number and on the issues as provided by law.

Attorney for Plaintiffs Dr. Edmond and Anne
Marie Massullo

8